United States Court of Appeals,

Eleventh Circuit.

No. 92-8657.

UNITED STATES of America, Plaintiff-Appellee,

v.

Levon BAZEMORE, Freddie Hull, Jr., Defendants-Appellants.

Dec. 22, 1994.

Appeals from the United States District Court for the Southern District of Georgia. (Nos. CR491-176-04, CR491-176-08), B. Avant Edenfield, Chief Judge.

Before EDMONDSON and BIRCH, Circuit Judges, and HILL, Senior Circuit Judge.

HILL, Senior Circuit Judge:

Appellants Freddie Hull, Jr. and Levon Bazemore appeal their convictions and sentences for conspiracy to distribute and to possess with intent to distribute cocaine, violating 21 U.S.C. § 846, and for the use of a firearm in furtherance of a drug conspiracy, violating 18 U.S.C. §§ 2 and 924(c). Bazemore also appeals his conviction for distributing marijuana, violating 21 U.S.C. § 841(a)(1). For the reasons that follow, we affirm Hull's conviction and sentence. Bazemore's judgment of conviction and sentence is affirmed without opinion. *See* 11th Cir.R. 36-1.

I. FACTUAL AND PROCEDURAL BACKGROUND

Hull was indicted by the grand jury with sixteen other members of the locally notorious Ricky Jivens drug organization in September 1991.[1] Violence was routine to this cocaine and crack peddling gang that began in Savannah, Georgia in the late 1980's.

_____

[1]Ricky Jivens, the kingpin of the drug empire, pled guilty and was sentenced to life imprisonment without parole.

It was reputed to be responsible for one-third of Savannah's 1991 homicides.[2] Hull eluded arrest and appointed counsel for Bazemore reported a conflict of interest immediately before trial. As a result, Hull and Bazemore were severed from the trial of the first eight defendants and jointly tried three months later.[3]

## II. ISSUES RAISED AND STANDARDS OF REVIEW

Hull contends that the district court erred in finding the existence of a conspiracy and in admitting hearsay evidence. He also asserts that the evidence was insufficient to support his conviction.[4] The admission of alleged hearsay and finding of a conspiracy address a factual finding by the district court. We review factual findings under a clearly erroneous standard. *United States v. Beale,* 921 F.2d 1412, 1422 (11th Cir.), *cert. denied,* ---

---

[2]Jivens used murder as an initiation rite into the organization to insure loyalty and to prevent members from turning against other gang members. A person had to "get down" (murder) in order to enter the organization and to receive any sizeable quantity of "fronted" cocaine. Apparently, this requirement put many of Jivens' confederates in jeopardy of capital offense charges; gave prosecutors strong plea bargaining positions; and contributed to the downfall of the conspiracy.

[3]Additional background about the Ricky Jivens organization is found in *United States v. Newton,* 11th Cir., 1994, --- F.3d ---- (Nos. 92-8228, 92-8764, 92-8376, December 22, 1994).

[4]We conclude that the issue of randomly identifying alternate jurors, the evidentiary issue of admitting firearms seized from coconspirators' homes under Federal Rules of Evidence 403, and the sentencing errors raised by Hull on appeal (as to his offense level and fine) are without merit and warrant no discussion. In addition, Hull adopts, pursuant to 11th Circuit Rule 28-2(e), Bazemore's argument on the issue of change of venue. Our review of the record shows that Bazemore filed a motion for change of venue which was denied by the magistrate judge. No appeal was taken to the district court and no renewal of the claim was made either during trial or post trial. Accordingly, the venue claim has been waived. It was not preserved for our review by either Appellant.

U.S. ----, 112 S.Ct. 99, 116 L.Ed.2d 71 (1991). The sufficiency of the evidence to support a jury verdict is a question of law subject to *de novo* review. *United States v. Harris,* 20 F.3d 445, 452 (11th Cir.1994). In deciding, we view the evidence in the light most favorable to the Government to ascertain whether the jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Poole,* 878 F.2d 1389, 1391 (11th Cir.1989). "The court need not exclude every reasonable hypothesis of innocence or find guilt to be the only reasonable conclusion." *United States v. Garcia,* 13 F.3d 1464, 1473 (11th Cir.), *cert. denied,* --- U.S. ----, 114 S.Ct. 2723, 129 L.Ed.2d 847 (1994).

## III. DISCUSSION

The Government called a juvenile witness, identified as CJR, to testify about Hull's membership in the drug conspiracy.[5] CJR identified Hull as a regular member of the Ricky Jivens gang who attended meetings (described as planning sessions) on the back porch of Jivens' mother's house. He testified that, although he never saw Jivens deliver cocaine to Hull, he [CJR] did pick up money from Hull that was routed to Jivens.

CJR recounted that he had seen Hull with two kilograms of cocaine in his Waldburg Street apartment. The cocaine was in

---

[5]CJR testified for the Government under an immunity arrangement to provide an insider's perspective of the Ricky Jivens organization in chilling detail. CJR admitted smoking crack since the age of twelve and committing three murders (including a boyhood friend) to prove his loyalty to the drug gang. At the time of trial, CJR was sixteen years old and had been the "right-hand man" and "muscle" for one of the Jivens organization's principal distributors, Samuel Lee Gadsden. Gadsden was a fugitive until he was captured in January 1992, after which time he pled guilty to Counts One and Three of the indictment.

powder form, wrapped in a layer of black pepper, the gang's signature. CJR testified that he saw Hull in 1991 with several ounces of cocaine and a quarter kilogram of crack on Waldburg Street.[6] CJR claimed Jivens told him that Hull was instructed to shoot people three times in the head as his personal signature.[7]

CJR implicated Hull in the drive-by murder of indicted drug dealer Antonio Anderson (a/k/a Antonio Hunter). CJR testified that he had seen Hull and Bazemore shoot Anderson with two automatic weapons, a Tech-9 and an AK 47, from a distance of ten to fifteen feet. This testimony was later impeached by a forensic scientist, Roger Parian, of the Georgia State Crime Lab, who was called as an expert witness by the defense. Parian testified that Anderson died as a result of gunshot wounds from a .38 or .357 pistol, not an automatic weapon. Savannah Police Department homicide records and Georgia Bureau of Investigation crime lab reports suggested that Anderson was shot at close range, six to eighteen inches. CJR also testified that Anderson was shot at 11:00 p.m., when the actual time of death was shown by the autopsy report and homicide records to be many hours earlier.

Immunized coconspirator Jerome Richardson was called as a witness for the Government. He related his experience with Ricky Jivens and other gang members both before and after his July 16,

---

[6]This testimony was corroborated by Joselyn Hunter, murder victim Antonio Anderson's sister and a known drug user, who accompanied Hull to his apartment in August 1991 and saw "bags of coke, cardboard, razor blades, shake."

[7]CJR's testimony was corroborated by Ricky Jivens in an August 13, 1991, videotape. Government witness Jerome Richardson also furnished the jury with similar testimony concerning what Ricky Jivens had said to him about "Jimbo" Hull.

1991 conversion to informant status. Richardson testified that Ricky Jivens had told him "Jimbo" had "got[ten] down" (killed someone) for the gang. The August 13, 1991, videotape shows Ricky Jivens stating: "Jimbo say okay ... I'm gonna handle my business. You know what I'm saying ... Jimbo got down, man ... [Jimbo] graduated...." This corroborates Richardson's testimony about Hull. Richardson recounted that Ricky Jivens told him that "Jimbo did" Antonio Anderson. Richardson further testified that Ricky Jivens told him that Hull taught him how to "cook" cocaine (to transform it from powder hydrochloride form into base or crack form).

Joselyn Hunter testified for the Government. She reported that she bought crack from "Jimbo" Hull. Hunter testified that, on the day her brother was murdered, she heard a volley of gunshots, turned, and saw Hull in the passenger seat of the car speeding away from Anderson's body. Another Government witness, Walter Moore, also placed Hull at the murder scene, in the front passenger seat of a car matching the general description furnished by Hunter.

A. *Coconspirator Statements*

Hull claims that the Government was unable to present any direct evidence to connect him to the Ricky Jivens organization. He submits that both CJR and Richardson were reciting hearsay information.[8] The Government contends that the testimony falls

---

[8]The Government argues that Hull's evidentiary challenge to coconspirator testimony has not been preserved for appeal. We disagree. We have examined the record and find that counsel for Hull appears (somewhat unartfully, and, perhaps, accidentally) to have successfully preserved this issue for purposes of our review.

within the hearsay exception of the Federal Rules of Evidence 801(d)(2)(E).

We do not endorse the proposition that all hearsay statements made by coconspirators are admissible. For a coconspirator's statement to be admissible under Rule 801(d)(2)(E), the statement must have been made "during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E); *Bourjaily v. United States,* 483 U.S. 171, 173-75, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987). Nonetheless, "[t]his court applies a liberal standard in determining whether a statement is made in furtherance of a conspiracy." *United States v. Santiago,* 837 F.2d 1545, 1549 (11th Cir.1988). In addition, the determination of whether a statement is made in furtherance of a conspiracy is a determination of fact that will be disturbed only if clearly erroneous. *See Bourjaily,* 483 U.S. at 179-81, 107 S.Ct. at 2781; *United States v. Turner,* 871 F.2d 1574, 1581 (11th Cir.), *cert. denied,* 493 U.S. 997, 110 S.Ct. 552, 107 L.Ed.2d 548 (1989).

The security of the drug gang through the loyalty of its members was always a priority to Ricky Jivens. Two witnesses testified to statements made by Jivens as to Hull's loyalty to the gang. We reviewed these statements and conclude that the subjects discussed were made during and in furtherance of the conspiracy. The evidence shows that Jivens told CJR that Hull was instructed to shoot people three times in the head as his personal signature. The evidence shows that Jivens told Richardson that Hull had "gotten down" for the gang, that "Jimbo did" Anthony Anderson, and that Hull had taught him how to "cook" cocaine. It is evident that

a conspiracy was present and that Hull was a trusted member.  Under the liberal standard applied by this Court, the district court's conclusion that these statements were made in furtherance of the conspiracy and admissible under Rule 801(d)(2)(E) is not clearly erroneous.

B. *Sufficiency of the Evidence to Support the Jury Verdict*

Hull claims that the evidence at trial was insufficient to support his convictions under either the 21 U.S.C. § 846 conspiracy count and the 18 U.S.C. § 924(c) weapons count.  Hull contends that the Government's case hinged upon the testimony of CJR who was later impeached in full.  The Government claims that any discrediting of CJR's testimony is strictly limited to the Anderson homicide, about which CJR was not lying, but merely mistaken.  The Government further asserts that Hull's involvement in that slaying was corroborated by two independent eyewitnesses, Hunter and Moore.[9]

The evidence shows that Hull was a trusted member of the Ricky Jivens drug gang.  The evidence also shows that Hull used firearms in furtherance of the conspiracy.  CJR testified that Hull was present at planning sessions on the back porch of Ricky Jivens' mother's house.  This alone suggests that Hull is a trusted confederate of the organization.  It is doubtful, given Ricky Jivens' strong propensity for violence and his paranoia about having a member turn on him, *i.e.,* the murder initiation

---

[9]With regard to the frailties of CJR, Hunter and Moore as witnesses, credibility decisions are matters for the jury. *United States v. Branca,* 677 F.2d 59, 61 (11th Cir.1982).  The jury, by their verdict, at the very least, found CJR to be a credible witness.

requirement, that Jivens would allow Hull to sit in on these back porch meetings without Hull's being a full-fledged member of the gang. Viewing the evidence in the light most favorable to the Government, a reasonable trier of fact could have found that the evidence established Hull's guilt beyond a reasonable doubt. We find the evidence at trial sufficient to support the jury verdict.

## IV. CONCLUSION

For the above reasons, we affirm Hull's conviction and sentence.

AFFIRMED.