United States Court of Appeals,

Eleventh Circuit.

No. 93-8773.

UNITED STATES of America, Plaintiff-Appellee,

v.

Mitchell LAMPLEY, Defendant-Appellant.

Nov. 15, 1995.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:91-CR-08-01-RLV), Robert L. Vining, Jr., Chief Judge.

Before HATCHETT and CARNES, Circuit Judges, and OWENS[*], Senior District Judge.

HATCHETT, Circuit Judge:

Appellant, Mitchell Lampley, challenges his convictions and sentence for drug trafficking. Although Lampley raises several contentions on appeal, only two evidentiary issues require discussion. We find no error with respect to the district court's rulings and affirm Lampley's convictions and sentence.

FACTS

Lampley sold marijuana to an individual named Nathaniel Tarver from the mid-1970s to the early 1980s. Lampley then began to sell cocaine to Tarver, and continued to do so until the mid-1980s. At that point, Tarver began to buy his narcotics from other sources. The two continued to stay in contact, however, and Tarver made a couple of cocaine purchases from Lampley in the late 1980s.

In the summer of 1990, Tarver contacted Lampley and informed him of a source that had a large quantity of cocaine. Lampley

---

[*]Honorable Wilbur D. Owens, Jr., Senior U.S. District Judge for the Middle District of Georgia, sitting by designation.

initially told Tarver that he was not interested in dealing with the source.  Later in the summer, however, Lampley contacted Tarver and asked him if the source was still available.  Tarver then arranged a meeting in August 1990, in which he and his source met with Lampley and Lampley's partner, Jesse Hart.  The parties were unable to make a deal.

Approximately three months later, on November 24, 1990, Tarver began negotiating a cocaine transaction with Revere Christophe, an undercover agent of the Drug Enforcement Administration (DEA).  Christophe and Tarver met the next day, November 25, 1990;  Tarver told Christophe that he had several sources that could supply large amounts of cocaine.  On November 29, 1990, Tarver informed Christophe that he had already contacted two of his sources and that he needed to know how much cocaine Christophe wanted and what price he was willing to pay.  On December 7, 1990, Tarver and Christophe engaged in another conversation in which they continued to discuss cocaine quantities and price.  At some point thereafter, Tarver contacted Lampley and arranged for him to be Christophe's source.

On December 31, 1990, Tarver and Christophe finally agreed on a ten-kilogram transaction to take place on January 4, 1991.  Tarver and Christophe discussed the details of the exchange on January 2, 3, and 4, 1991.  On January 4, 1991, Tarver met with Christophe and gave him a sample of cocaine that Lampley had provided.  Later that day, Tarver, Lampley, and Hart met.  While Lampley and Tarver discussed how to complete the deal with Christophe, Hart secured the ten kilograms of cocaine.  The three

ultimately planned to give Christophe one kilogram initially, and the remaining nine kilograms at a second delivery. DEA agents eventually arrested the three coconspirators. Agents found a kilogram of cocaine in Lampley's car and nine kilograms of cocaine in Hart's car.

PROCEDURAL HISTORY

On January 8, 1991, a grand jury in the Northern District of Georgia returned a two-count indictment against Lampley, Tarver, and Hart. Count I charged them, "and others known and unknown to the Grand Jury," with conspiring to distribute cocaine in violation of 21 U.S.C. § 846. Count II charged them with the substantive offense of possessing cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). Tarver subsequently agreed to cooperate with the government and entered a plea of guilty to Count I of the indictment on September 20, 1991.

On September 24, 1991, the government informed Lampley of its intention to introduce extrinsic act evidence pursuant to rule 404(b) of the Federal Rules of Evidence. The notice listed five instances of prior misconduct: (1) the marijuana transactions between Lampley and Tarver from the late 1970s to the mid-1980s; (2) the cocaine transactions between Lampley and Tarver from the late 1970s to the mid-1980s; (3) a one kilogram cocaine transaction between Lampley and Tarver in 1989; (4) the conversations between Lampley and Tarver in 1990 concerning Tarver's cocaine source; and (5) the meeting between Lampley and

Tarver's cocaine source in 1990.[1]

Because the government intended to introduce these numerous prior dealings between Lampley and Tarver, Hart moved to sever their trials. The district court granted his motion. Hart proceeded to trial first. On October 4, 1991, a jury convicted him on both counts of the indictment.

Lampley's trial commenced on February 4, 1992. At trial, despite defense counsel's objection, the district court allowed the government to introduce tape recordings of conversations between Tarver and Christophe occurring on November 29, 1990, December 7 and 31, 1990, and January 2, 3, and 4, 1991. Also over defense counsel's objection, the district court allowed Tarver to testify about his past dealings with Lampley. After the government presented its case, Lampley took the stand and presented a "mere presence" defense; he also denied having any past drug dealings with Tarver. At the conclusion of the trial, the district court instructed the jury that it could not consider the evidence of Lampley's past conduct "to prove that the defendant did the acts charged in this case, but only to prove the defendant's state of mind." The jury convicted Lampley on both counts.

## CONTENTIONS

Lampley contends that the district court abused its discretion in allowing Tarver to testify about his past dealings with Lampley. Lampley also contends that the tape-recorded conversations between

_____

[1]The government subsequently amended its notice. The amendment essentially changed the details related to the fifth act of misconduct. In particular, the amended notice changed the date of the meeting from September 1990 to August 1990.

Tarver and Christophe constitute inadmissible hearsay and therefore should not have been admitted into evidence.[2]

The government responds that Lampley's past dealings with Tarver were admissible to show Lampley's knowledge and intent. The government also argues that the tape-recorded conversations are admissible as statements made in furtherance of a conspiracy.

## ISSUES

We discuss the following issues: (1) whether Lampley's prior dealings with Tarver were admissible under rule 404(b) of the Federal Rules of Evidence; and (2) whether the tape-recorded conversations between Tarver and Christophe were admissible under rule 801(d)(2)(E) of the Federal Rules of Evidence.

## DISCUSSION

A. Rule 404(b)

We review the district court's decision, under rule 404(b), to admit the evidence concerning Lampley's past dealings with Tarver for abuse of discretion. *United States v. Delgado,* 56 F.3d 1357, 1363 (11th Cir.1995).

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or

---

[2]Lampley raises three other contentions on appeal: (1) the government engaged in misconduct that violated his Sixth Amendment rights; (2) the evidence against him was insufficient; and (3) he was entitled to a sentence reduction pursuant to U.S.S.G. § 3B1.2. We find that these claims lack merit and do not warrant discussion.

absence of mistake or accident...."   Fed.R.Evid. 404(b).   A

three-part test governs the admissibility of rule 404(b) evidence:

> First, the evidence must be relevant to an issue other than the defendant's character;  Second, the act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act;  Third, the probative value of the evidence must not be substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403.

*Delgado,* 56 F.3d at 1365 (citing *United States v. Miller,* 959 F.2d

1535 (11th Cir.) (*en banc* ), *cert. denied,* --- U.S. ----, 113 S.Ct.

382, 121 L.Ed.2d 292 (1992) *and United States v. Beechum,* 582 F.2d

898 (5th Cir.1978) (*en banc* ), *cert. denied,* 440 U.S. 920, 99 S.Ct.

1244, 59 L.Ed.2d 472 (1979)).[3]  Lampley contends that none of the

three prongs have been satisfied.

With respect to the first prong, Lampley contends that the

government never articulated how his prior drug dealings with

Tarver were relevant to an issue other than his character;

furthermore, Lampley argues that the district court never made a

specific finding as to the relevance of this evidence.  The record,

however, does not support Lampley's contentions.  After defense

counsel stated an objection to the rule 404(b) evidence, the

government specifically responded that defense counsel had argued

that "Mr. Tarver tricked Mr. Lampley.  And the evidence is coming

in to show motive and intent."  Likewise, the district court made

findings as to relevance.  The district court, recognizing that

Lampley was presenting a "mere presence" defense, stated that the

---

[3]In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc* ), this court adopted as binding precedent all decisions of the Fifth Circuit rendered prior to October 1, 1981.

evidence "shows dealings between these parties and it probably shows the motive that this was not an accidental or unknowing or unwilling transaction that Mr. Lampley entered into; it shows intent.... This goes to show motive and intent and it goes to show knowledge and willfulness." The district court was clearly correct in determining that Lampley's prior dealings with Tarver were relevant to the issue of his intent. *See Delgado,* 56 F.3d at 1365.

With respect to the second prong, Lampley asserts that Tarver's trial testimony concerning their prior dealings was significantly different from the government's account of their prior dealings as put forth in the rule 404(b) notice. For example, Lampley points out that: (1) the notice described a single kilogram cocaine transaction in 1989, but Tarver testified that he had a couple of half-kilogram cocaine transactions with Lampley, and he was not certain of their date; and (2) Tarver's testimony as to what was said at the meeting between Lampley and Tarver's cocaine source, and his testimony as to when the meeting occurred, differed from the description of the meeting in the original notice. Lampley contends that these discrepancies demonstrated that Tarver was not a credible witness, and therefore, his unsubstantiated testimony did not sufficiently show that their prior dealings did in fact occur. We must, however, defer to the district court's determination that the testimony was credible enough to allow a jury to find that the prior dealings between Lampley and Tarver occurred. *See United States v. Holland,* 874 F.2d 1470, 1473 (11th Cir.1989) ("Credibility determinations made by the district court are entitled to deference by a reviewing

court.").[4]

Finally, with respect to the third prong, Lampley contends that the district court never engaged in a rule 403 balancing inquiry, and, if it had, it would have recognized that the prejudicial nature of some of the extrinsic act evidence substantially outweighed its probative value.[5] Specifically, Lampley focuses on his marijuana dealings with Tarver in the mid-1970s. He contends that these dealings had no probative value because they were too remote in time (approximately fifteen years old) and involved different circumstances (they were small marijuana deals, unlike the instant large cocaine deal). As a result, he asserts that this evidence could only prejudice him in the eyes of the jurors. The record, however, does not support Lampley's contention that the district court did not conduct a rule 403 balancing test. In response to this specific argument concerning the remoteness and prejudicial nature of the mid-1970s marijuana transactions, the district court stated:

---

[4]In a related argument, Lampley contends that the differences between Tarver's testimony and the rule 404(b) notice were so great that the notice was essentially ineffective. We disagree. The government must only provide notice of the "general nature" of the extrinsic act evidence. Fed.R.Evid. 404(b); *see also United States v. Barnes,* 49 F.3d 1144, 1148-49 (6th Cir.1995) ("[T]he government's notice must characterize the prior conduct to a degree that fairly apprises the defendant of its general nature."). In some instances, Tarver's testimony may have added or changed certain details, but, in general, his testimony adhered to the descriptions of the prior bad acts listed in the notice.

[5]Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence."

> The ten-year rule only applies to convictions. This is under 404 and I assume *Beechum,* similar acts which has no bounds by time. I guess what I will have to do is weigh it as the case goes on.... You know, on the surface it appears it's probably going to be admissible, but that doesn't mean it is. But the ten-year rule does not apply and I will just have to balance it according to *Beechum* and 404 and 403.

Thus, the district court was fully cognizant of the appropriate standard, and we assume that the district court carried out its intention to conduct the balancing test when it ultimately admitted the evidence. Furthermore, we cannot say that the district court abused its discretion in determining that the mid-1970s marijuana dealings were admissible under rule 403 despite their differing nature and remoteness in time. *See Delgado,* 56 F.3d at 1366 (rejecting argument that prior drug dealings were different in nature); *United States v. Pollock,* 926 F.2d 1044, 1048 (11th Cir.) (noting that courts have upheld the admission of rule 404(b) evidence that "occurred ten and thirteen years earlier than the charged offense"), *cert. denied,* 502 U.S. 985, 112 S.Ct. 593, 116 L.Ed.2d 617 (1991).

In sum, the district court did not abuse its discretion in admitting the evidence of Lampley's past drug dealings.

B. Rule 801(d)(2)(E)

The district court allowed into evidence tape recordings of conversations that occurred between Tarver and Christopher on November 29, 1990, December 7 and 31, 1990, and January 2, 3, and 4, 1991. Lampley contends that the statements in these conversations were hearsay and should not have been admitted.

Out-of-court statements are not considered hearsay, however, if they were made "by a coconspirator of a party during the course

and in furtherance of the conspiracy."  Fed.R.Evid. 801(d)(2)(E).
The determination of whether a statement was made during the course
and in furtherance of a conspiracy "is a determination of fact that
will be disturbed only if clearly erroneous."  *United States v.
Bazemore,* 41 F.3d 1431, 1434 (11th Cir.1994).

Lampley contends that rule 801(d)(2)(E) does not apply
because a conspiracy did not exist as of the time of the
tape-recorded conversations;  in other words, he argues that the
statements were not made "during the course" of the conspiracy.
Lampley, however, ignores the fact that as of November 29, 1990,
the date of the first tape-recorded conversation, Tarver had
already contacted two of his cocaine sources, and therefore, a
conspiracy existed.  Although Lampley did not join the conspiracy
until Tarver contacted him, which was sometime after December 7,
1990, all of the tapes were admissible because a "declaration of
one co-conspirator is admissible against members of the conspiracy
who joined after the statement was made."  *United States v.
Tombrello,* 666 F.2d 485, 491 (11th Cir.) (quoting *United States v.
Holder,* 652 F.2d 449, 451 (5th Cir.1981)), *cert. denied,* 456 U.S.
994, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982);  *see also United
States v. Brown,* 943 F.2d 1246, 1255 (10th Cir.1991) (citing cases
from the First, Second, Third, Fourth, Fifth, Seventh, and Ninth
Circuits in concluding that the "prevailing view among the circuits
is that previous statements made by co-conspirators are admissible
against a defendant who subsequently joins the conspiracy").  Thus,
the statements on all of the tapes were properly admitted because
a conspiracy existed when the statements were made and Lampley

subsequently joined that conspiracy.

## CONCLUSION

Finding no evidentiary errors under rules 404(b) and 801(d)(2)(E), we affirm Lampley's convictions and sentence.

AFFIRMED.