[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12230
Non-Argument Calendar

_____

D.C. Docket No. 6:10-cr-00007-BAE-GRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RAYMOND FLOREZ,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Georgia

_____

(April 9, 2013)

Before TJOFLAT and BLACK, Circuit Judges, and MOLLOY,[*] District Judge.

PER CURIAM:

_____

[*]Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

Raymond Florez (Raymond) appeals his conviction for one count of conspiracy to possess with intent to distribute 5 kilograms or more of cocaine and 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 846.  Raymond presents six issues on appeal, which we address in turn.  After review, we affirm Raymond's conviction.

I.

Raymond asserts the district court abused its discretion under Federal Rule of Evidence 403 and 404(b) in admitting evidence of his 1995 conviction for possession of marijuana with intent to distribute.  Raymond argues the prior conviction's remoteness, 12 years from the date the instant offense was alleged to have begun, made its admission highly prejudicial and irrelevant.  Raymond contends the Government presented no evidence Raymond's prior conviction had any connection to the evidence presented at trial, other than propensity evidence, and there was a risk that the jury may have convicted Raymond based solely on his prior conviction.

A district court's evidentiary rulings are reviewed for abuse of discretion. *United States v. Malol*,  476 F.3d 1283, 1291 (11th Cir. 2007).  Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion. Fed. R. Evid.

2

404(a).  Federal Rule of Evidence 404(b), however, allows evidence of other crimes to be admitted for the purpose of showing a defendant's intent.

To be admissible, the Rule 404(b) evidence must: (1) "be relevant to an issue other than the defendant's character;" (2) be proved sufficiently to permit a jury determination that the defendant committed the act; and (3) be of probative value that is not substantially outweighed by undue prejudice and meet the other requirements under Federal Rule of Evidence 403.  *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003).  "Rule 404(b) is a rule of inclusion, and [] accordingly 404(b) evidence, like other relevant evidence, should not lightly be excluded when it is central to the prosecution's case."  *Id.* (quotations omitted).

Under the first prong of the Rule 404(b) test, we have stated that, in drug conspiracy cases, "a not guilty plea renders the defendant's intent a material issue. Evidence of such extrinsic evidence as may be probative of a defendant's state of mind is admissible unless the defendant affirmatively takes the issue of intent out of the case." *United States v. Matthews,* 431 F.3d 1296, 1311 (11th Cir. 2005) (alterations, ellipsis, and quotations omitted).

In applying the third prong of the Rule 404(b) test, the district court must consider Federal Rule of Evidence 403, which states that a court can exclude relevant evidence if the probative value is substantially outweighed by, *inter alia*,

3

unfair prejudice.  To make this determination, a district court must apply "a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." *Jernigan*, 341 F.3d at 1282 (quotations omitted).  "A similarity between the other act and a charged offense will make the other offense highly probative with regard to a defendant's intent in the charged offense." *United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005). A district court's limiting instruction can reduce the risk of undue prejudice.  *United States v. Edouard*, 485 F.3d 1324, 1346 (11th Cir. 2007).

We have declined adopting a bright-line rule with respect to temporal proximity because decisions regarding impermissible remoteness are highly fact-specific. *Matthews*, 431 F.3d at 1311.  A defendant "bears a heavy burden in demonstrating an abuse of the court's broad discretion in determining if an extrinsic offense is too remote to be probative." *Id.* (quotations omitted).  In the past, we have held that a 15-year time-span did not render the extrinsic acts too remote for proper consideration, despite the fact that the drug acts differed in nature.  *United States v. Lampley*, 68 F.3d 1296, 1300 (11th Cir. 1995).

Raymond's prior conviction was relevant to an issue other than his character because his intent was directly at issue based on his not-guilty plea and the

4

defense's theory of the case. Because his prior conviction was similar to the instant offense, the prior conviction was highly probative of his intent. Further, the probative value of the evidence was not outweighed by any undue prejudice caused by the remoteness of his conviction. Thus, the district court did not abuse its discretion in admitting evidence of his prior conviction.

## II.

Raymond argues that DEA Special Agent Robert Livingston's testimony at trial regarding Raymond's connection to two drug investigations that occurred in Texas and Ohio was inadmissible hearsay. Agent Livingston testified regarding (1) telephone records that connected Raymond to a drug courier arrested in Texas, and (2) the facts surrounding investigations into the arrests of drug couriers in Texas and Ohio. Raymond asserts that, although such evidence is admissible to explain why law enforcement started an investigation, it should only be used to provide background information. Raymond contends that, in his case, the evidence was used for the truth of the matter asserted, as demonstrated by the Government's closing argument where the challenged testimony was used as substantive evidence of his guilt. Finally, Raymond argues that this evidence was testimonial hearsay and violated his right to confront witnesses.

5

Raymond concedes that, because he did not object to the testimony at trial, it is reviewable only for plain error. Where a defendant fails to preserve an evidentiary ruling by contemporaneously objecting, we review only for plain error. *United States v. Turner*, 474 F.3d 1265, 1275 (11th Cir. 2007); *see United States v. Jiminez*, 564 F.3d 1280, 1286 (11th Cir. 2009) (reviewing Confrontation Clause challenge for plain error). "To demonstrate plain error, the defendant must show that there is (1) error, (2) that is plain and (3) that affects substantial rights." *Turner*, 474 F.3d at 1276. If all three conditions are met, we may then exercise our discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotations omitted). "Errors . . . affect a substantial right of a party if they have a substantial influence on the outcome of a case or leave grave doubt as to whether they affected the outcome of a case." *Id.* (quotations omitted).

> We have long recognized that:
>
> statements by out of court witnesses to law enforcement officials may be admitted as non-hearsay if they are relevant to explain the course of the officials' subsequent investigative actions, and the probative value of the evidence's non-hearsay purpose is not substantially outweighed by the danger of unfair prejudice caused by the impermissible hearsay use of the statement.

*Id.* at 1288 (quotations and alteration omitted).

6

The Confrontation Clause of the Sixth Amendment prohibits the admission of certain forms of hearsay, specifically testimonial, out-of-court statements, unless the declarant is unavailable and the defendant had a previous opportunity to cross-examine the declarant. *Id.* at 1286 (citing *Crawford v. Washington*, 541 U.S. 36, 51-52 (2004)). Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Id.* at 1287 (quoting Fed. R. Evid. 801(c)). Hearsay is considered testimonial if it is "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *United States v. Baker*, 432 F.3d 1189, 1203 (11th Cir. 2005) (quotations omitted). The Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. *Jiminez*, 564 F.3d at 1287.

Generally, business records are "by their nature [] not testimonial" hearsay. *Crawford*, 541 U.S. at 56. We have held documents which are routinely recorded for a purpose other than preparation for a criminal trial are non-testimonial for purposes of the Sixth Amendment. *See Caraballo*, 595 F.3d at 1228-29 (holding an immigration form, used for "routine, objective cataloging of unambiguous biographical matters," was not testimonial because it was primarily used to track

7

the entry of aliens into the United States, and it was "of little moment that an incidental or secondary use of the interviews underlying the [] forms actually furthered a prosecution").

Because no objection was made to this testimony, the record is unclear as to why the court initially admitted the telephone and bank records testimony. *See Jiminez*, 564 F.3d at 1288-89 (stating we will uphold the admission of testimony if it is admissible on other, non-stated grounds apparent from the record). However, the prosecutor did later rely on this evidence in his closing arguments as substantive evidence of Raymond's guilt, for the truth of the matter asserted, and the records were never introduced at trial. The records would have been admissible as an exception against hearsay under Federal Rule of Evidence 803(6)(B), but there is no hearsay exception for testimony about records not in evidence. Thus, it appears that an error that was plain occurred with respect to the admission of the challenged portions of Livingston's testimony. However, based on the evidence supporting his conviction as detailed in Issue VI below, the admission of this evidence did not affect Raymond's substantial rights. *See Turner*, 474 F.3d at 1276. Further, because telephone and business records are recorded for a purpose other than a criminal trial and are not testimonial,

8

Livingston's testimony regarding the contents of the records does not violate the Confrontation Clause. *See Caraballo*, 595 F.3d at 1228-29.

As to the facts surrounding the arrests of drug couriers in Texas and Ohio, this evidence was also later used for the truth of the matter asserted in the Government's closing. Further, the Confrontation Clause may have been violated by Livingston's testimony regarding what law enforcement told him about their investigation into the Texas and Ohio incidents because an objective witness would have reasonably considered the statements to be available at a later trial. *See Baker*, 432 F.3d at 1203. Assuming, *arguendo*, the statements Livingston testified to were testimonial, any error that occurred in admitting the evidence did not affect Raymond's substantial rights in light of the other evidence properly admitted at trial supporting his conspiracy conviction. *See Turner*, 474 F.3d at 1276.

## III.

Raymond contends his right to remain silent was violated when a Government witness commented on Raymond's silence at trial in the witness's responses to Raymond's counsel's questions during cross-examination, and thus, he asserts that reversal of his conviction is required as a matter of law.

We review the court's refusal to grant a mistrial based on a comment regarding a defendant's right to remain silent for abuse of discretion. *United States v. Chastain*, 198 F.3d 1338, 1351 (11th Cir. 1999). The Fifth Amendment forbids comments on a defendant's silence, prohibiting any direct reference to a defendant's failure to testify as evidence of guilt. *United States v. Thompson*, 422 F.3d 1285, 1298 (11th Cir. 2005). However, not every reference to a defendant's failure to testify is a constitutional violation. *Id.* In determining whether a comment upon a defendant's invocation of his right to silence is impermissible, we consider whether the statement was (1) manifestly intended to refer to the defendant's silence or (2) was of such a character that a jury would naturally and necessarily take it to be a comment on the defendant's silence. *Chastain*, 198 F.3d at 1351. Therefore, a court must consider the circumstances under which the statement was made. *Id.* Where a witness's comments are made in direct response to defense counsel's open-ended questions, the statements are not manifestly intended to be a comment on the defendant's right to testify. *Id.* at 1351-52. Where a witness responds to a question at trial by stating the defendant should be asked the question instead and the context makes clear the witness is referring to his inability to answer the question, the witness is not commenting on the

10

defendant's silence. *United States v. Guerra*, 293 F.3d 1279, 1289 (11th Cir. 2002).

The district court did not abuse its discretion. The improper comments occurred in the context of cross-examination. The witness's answers were responses to defense counsel's questions, and thus, it cannot be shown that the witness manifestly intended to refer to Raymond's silence. *Chastain*, 198 F.3d at 1351-52. Further, similar to *Guerra*, the witness's response was that he did not know the answer to the question asked, but Raymond did. Thus, the response was not commenting on Raymond's silence, but on his inability to answer the question. *Guerra*, 293 F.3d at 1289. Further, any possible error was cured by the district court's instructions to the jury at the beginning and end of trial that they could not fault the defendant for remaining silent.

## IV.

Raymond raises multiple arguments concerning prosecutorial misconduct. He contends the Government impermissibly relied on facts not in evidence at closing. At trial, the Government made references in its closing arguments to telephone records that connected Raymond to a drug courier arrested in Ohio, without having presented any evidence regarding the records during trial. The Government also claimed that the person seen driving the vehicle accompanying

11

the drug courier was a Hispanic male, without presenting any supporting evidence, in order to show that Raymond was the individual driving the truck. Next, Raymond argues that the prosecutor made repeated attacks on his defense counsel's credibility at trial by the prosecutor's statements that a question that defense counsel asked was impermissible and that defense counsel was misrepresenting the record. Finally, a Government witness made a reference to a mistake by defense counsel during the witness's testimony, further attacking Raymond's defense counsel's credibility.

Ordinarily, we review claims of prosecutorial misconduct *de novo* because they are mixed questions of law and fact. *United States v. Merrill*, 513 F.3d 1293, 1306 (11th Cir. 2008). However, if "the defendant did not raise this objection at trial, we review only for plain error that is so obvious that failure to correct it would jeopardize the fairness and integrity of the trial." *Id.* at 1306-07 (quotations omitted). "To establish prosecutorial misconduct, (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." *Id.* at 1307 (quotation omitted). "[A] prosecutor may not exceed the evidence in closing argument." *United States v. Bailey*, 123 F.3d 1381, 1400 (11th Cir. 1997).

12

A personal attack on an opposing lawyer may constitute prosecutorial misconduct. *See United States v. Young*, 470 U.S. 1, 6-10 (1985) (noting the prosecution must not be permitted to make unfounded and inflammatory attacks on the opposing advocate and that to do so may constitute prosecutorial misconduct).  However, where a prosecutor's comment about a defendant's attorney arises in the context of an evidentiary objection addressed to the court, not the jury, the comment does not rise to the level of misconduct.  *See United States v. Tampas*, 493 F.3d 1291, 1302-03 (11th Cir. 2007) (considering that prosecutor's statement was addressed to the court during an evidentiary objection, in concluding that statement did not rise to the level of prosecutorial misconduct). Further, we have declined holding that a prosecutor's comments constituted misconduct where the prosecutor directly accused defense counsel of misstating the evidence, making factually baseless accusations, and making fictitious closing arguments.  *United States v. Calderon*, 127 F.3d 1314, 1335-36 (11th Cir.1997).

The Government concedes it was improper to refer to facts not in evidence during closing argument.  *See Bailey*, 123 F.3d at 1400.  However, Raymond's substantial rights were not affected because the strong evidence supporting his drug conspiracy conviction demonstrates the outcome of his trial would have been the same without the error.

13

Further, none of the statements that Raymond challenges as attacking defense counsel's credibility were improper, and thus, no prosecutorial misconduct occurred in this context.  One statement arose in the context of an evidentiary objection addressed to the court, not the jury.  *See Tampas*, 493 F.23d at 1302-03.  In the other instance, the Government called the witness back to the stand a second time, and the witness made clear that he had testified as defense counsel had recalled and clarified the confusion that occurred over the issue.  Further, even where a prosecutor has stated that defense counsel misrepresented the record, this court has found no error.  *Calderon*, 127 F.3d at 1335-36.  Whatever misconduct the Prosecutor engaged in, or admitted, does not rise to the level of reversible error.

## V.

Raymond argues that the cumulative errors during his trial require reversal.  He contends that because of the weakness of the Government's case, the judgment in his case was affected by the errors.

Under the cumulative error doctrine, we review the record as a whole to determine whether the defendant was afforded a fundamentally fair trial.  *United States v. Lopez*, 590 F.3d 1238, 1258 (11th Cir. 2009).  The cumulative effect of several plain or harmless errors can result in the denial of the constitutional right

14

to a fair trial. *Baker*, 432 F.3d at 1223. The cumulative prejudicial impact of the several errors depends upon: (1) the nature and number of the errors committed, (2) the interrelatedness of the errors and their combined effect, (3) the district court's handling of the errors as they arose, and (4) the strength of the government's case. *Id.*

The errors that occurred were with respect to the admission of portions of the government agent's testimony and the prosecutor's reference to facts not in evidence in his closing statements. Both of these errors were interrelated and were regarding Raymond's connections to drug activity in Ohio and Texas. However, in light of the other evidence presented at trial demonstrating Raymond's guilt, these errors, taken together, did not deprive Raymond of a constitutionally fair trial.

## VI.

Finally, Raymond argues the evidence was insufficient to support his conspiracy conviction. He contends the Government failed to prove the scope, nature, duration, and members of the conspiracy, as well as show that Raymond actually intended to sell drugs to a confidential informant, rather than just talk about such a sale. He asserts the testimony at trial of convicted drug dealers that Raymond sold them both cocaine and marijuana on multiple occasions for them to

15

distribute should not be sufficient to support his conviction because their credibility was greatly undermined over the course of his trial.

We review both a challenge to the sufficiency of the evidence and the denial of a Federal Rule of Criminal Procedure 29 motion for judgment of acquittal *de novo*. *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir.), *cert. denied*, 132 S. Ct. 826 (2011). In considering the sufficiency of the evidence, we view the evidence in the light most favorable to the government, with all inferences and credibility choices made in the government's favor, and affirms the conviction if, based on this evidence, a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

To sustain a conviction for conspiracy to distribute drugs, the government must prove that "1) an agreement existed between two or more people to distribute the drugs; 2) that the defendant at issue knew of the conspiratorial goal; and 3) that he knowingly joined or participated in the illegal venture." *United States v. Brown*, 587 F.3d 1082, 1089 (11th Cir. 2009) (quotations omitted). The government does not need to show that the defendant knew all of the details or participated in every aspect of the conspiracy, only that the defendant "knew the essential nature of the conspiracy." *United States v. Garcia*, 405 F.3d 1260, 1269-70 (11th Cir. 2005) (quotations omitted).

The evidence at trial was sufficient to convict Raymond.  Multiple witnesses testified that Raymond actually supplied them with cocaine and marijuana, demonstrating both his agreement with others to supply drugs to them and his actions taken to further the conspiracy.  In addition, the Government presented audio recordings of conversations between a confidential informant and Raymond, which demonstrated Raymond's past involvement in distributing drugs, as well as his willingness to resume his drug activities.  Although Raymond argues the Government's witnesses were not credible, all credibility choices are made in the Government's favor.  *See Gamory*, 635 F.3d at 497.

## VII.

Based upon our review of the record and parties' briefs and having had the benefit of oral argument, we affirm Raymond's conviction.

**AFFIRMED.**

17

MOLLOY, J., CONCURRING:

I join in the majority opinion because there is no question that, under our case law, the opinion is sound. But I am compelled to note a concern.

My concern is the direction that the harmless error doctrine has taken—the development of the "guilty anyway" rule: Even when there is admitted error, even when the prosecution bases its argument on potentially prejudicial extra-record evidence, and even when the evidence is remote beyond relevance, the law requires us to conclude that the mistakes were of no legal consequence because the admissible proof shows that the defendant is "guilty anyway."

The harmless error doctrine might have noble origins. After all, it counsels us to defer to the jury's decision, despite minor errors, when the evidence clearly weighs against the defendant. But, at some point, the doctrine threatens the substantive fairness of a trial, the goal of which is to ferret out the truth through rigorous advocacy under an historical safeguard of adherence to the principles and rules of a fair trial.

When evidence of prior conduct under Rule 404(b) is admitted, the rule should be something more than a rule that can be reduced to an anything goes proposition. When the trial court rightly limits the testimony of a witness (in Agent Livingston's case to a very narrow purpose), it is untoward for the

18

prosecutor to disregard the judge's rulings and to make use of the evidence in a manner that the judge expressly disallowed. To then admit to us on appeal that the inappropriate use of that evidence at trial and in closing argument was an error, but made no difference, disrespects the rule of law and the institutional obligations that lawyers have to the court and to the administration of justice.

The guilty anyway rule does nothing to ensure that an over zealous prosecutor will be constrained by the rules and the trial judge's rulings. If fact, it does the opposite. It simply enforces the notion that it is easier to ask for forgiveness on appeal than it is to ask permission at trial.

But, as the majority points out, the trial court's application of the rules of procedure, the rules of evidence, and our application of the harmless error doctrine do not occur in a vacuum. The trial judge, for instance, can only serve his or her function in a system of advocacy when the advocates exercise their institutional roles and obligations. This means, in part, that defense counsel must raise meritorious objections at trial, rather than wait and present the objections for the first time on appeal. Tactical decisions are a part of every trial, but tactics do not usurp the obligation to toe the mark when it comes to ensuring fairness in the trial process. In this case, as the majority notes, the constraints placed on our review require defense counsel to make a proper record.

19

I join the majority, but I have grave concerns that the trial process increasingly drifts toward not a search for the truth through a rigorous rule based undertaking but a process where close enough counts in government work. If the law was not so clear on the issues raised in this appeal, I would reverse the convictions and send the case back for a new trial where the lawyers are compelled to do the job they are supposed to do.