[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12545
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cr-20895-DMM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RAHSHARD STEPHERSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 16, 2020)

Before GRANT, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

At 2:30am on a Friday morning, Ijan Van Wyk walked with a friend down Ocean Drive in Miami Beach.  The two had just spent several hundred dollars at South Beach bars and were in search of another one to spend their remaining cash.  That night, Van Wyk carried an iPhone, a wallet with two bank cards, $30–$60 in cash, and a $6,000 wristwatch.  A few hours later, he went home empty-handed.  He and his friend were robbed at gunpoint.

A jury convicted Rahshard Stepherson of the robbery, finding him guilty of one count of conspiracy to commit Hobbs Act robbery, one count of Hobbs Act robbery, and one count of brandishing a firearm while committing a crime of violence.  The district court determined that Stepherson was a career offender pursuant to U.S.S.G. § 4B1.1 and sentenced him to 360 months' imprisonment.  Stepherson now challenges his conviction and sentence.  We affirm in part and reverse in part.

## I.

Van Wyk, an Australian tourist, traveled to the United States to visit his long-distance girlfriend in Miami.  The night before his scheduled departure, he went out for drinks in Miami Beach with a friend-of-a-friend, Will Hardy.  They visited "around five" bars, spending about $200 each.  Around 2:30am, they left one bar and began searching for another.

As they walked down Ocean Drive, they ran into three men.  The men offered them weed; they declined.  They told the men that they were "just looking for another bar to go to."  "Follow us," the men responded, "we can show you the way."

Naively, Van Wyk and Hardy followed the men about a block down Ocean Drive and into an alley.  One of the men opened a door and they followed him into a fire escape.  Immediately, Van Wyk sensed that "something wasn't right."  But he was boxed in on both sides.

One of the men—who Van Wyk later identified as Stepherson—"manhandled [them] into the fire escape."  When Hardy pushed back, Stepherson pulled out and cocked a pistol.  Van Wyk screamed at Hardy to settle down.  But as Hardy kept resisting, Stepherson pressed the gun into his neck and stomach and then into Van Wyk's stomach.

Stepherson told Hardy, "[N]----, I ain't playing," and "pulled the magazine out" of the pistol to show Hardy and Van Wyk the live rounds inside.  The men then demanded that Van Wyk and Hardy go with them to an ATM to withdraw cash.  Stepherson left with Hardy, leaving Van Wyk in the stairwell.  A few minutes later, they returned.

Stepherson pointed the gun at Van Wyk and robbed him of his personal possessions, while another robbed Hardy.  Altogether, the robbers took Van Wyk's iPhone, a wallet with two bank cards, $30–$60 in cash, and a $6,000 wristwatch and Hardy's two cell phones and cash.

Stepherson and the other two men then exited the fire escape, leaving Van Wyk and Hardy alone.  Once they were gone, Van Wyk and Hardy escaped to the street.  They fled to a nearby police station and reported that they had just been robbed at gunpoint.

The police arrested Stepherson and his two co-defendants, Kemon Thompson and Vidyapati El, in connection with the robbery and a grand jury charged them each with four counts: conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), two counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), and brandishing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  While Stepherson's co-defendants elected to plead guilty, Stepherson went to trial.  The jury found him guilty of three of the four counts—acquitting him only of Hobbs Act robbery against Hardy.

Stepherson moved for a new trial, but the district court denied that motion. The court then sentenced him to 360 months' imprisonment.  He now appeals his convictions and his sentence.

## II.

We review a preserved challenge to "the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the verdict."  *United States v. Schier*, 438 F.3d 1104, 1107 (11th Cir. 2006).  But when the defendant raises a claim challenging the sufficiency of the evidence on a ground not argued below, we review the new claim for plain error only.  *United States v. Joseph*, 709 F.3d 1082, 1093 (11th Cir. 2013).  Under plain error review, before we can correct an error not raised at trial, there must be "(1) error, (2) that is plain, and (3) that affects substantial rights.  If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously

4

affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Baker*, 432 F.3d 1189, 1202–03 (11th Cir. 2005) (quotation omitted).

We review a preserved challenge to an evidentiary ruling for abuse of discretion. *United States v. Ellisor*, 522 F.3d 1255, 1267 (11th Cir. 2008). And we also apply abuse of discretion review to the denial of a motion for a new trial. *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1312 (11th Cir. 2013). But we review de novo questions of statutory interpretation, as well as the district court's interpretation and application of the Sentencing Guidelines. *United States v. Segarra*, 582 F.3d 1269, 1271 (11th Cir. 2009); *United States v. Gibson*, 434 F.3d 1234, 1243 (11th Cir. 2006).

## III.

## A.

Stepherson was convicted of both Hobbs Act robbery and conspiracy to commit Hobbs Act robbery. The Hobbs Act prohibits "extortion, and attempts or conspiracies to extort, that 'in any way or degree obstruct[], delay[], or affect[] commerce or the movement of any article or commodity in commerce.'" *United States v. Kaplan*, 171 F.3d 1351, 1354 (11th Cir. 1999) (quoting 18 U.S.C. § 1951(a)) (alterations in original). This case focuses on the commerce element. For Hobbs Act conspiracy, the government must prove that the defendant's scheme "*would have* affected interstate commerce," while a substantive violation of the Hobbs Act requires proof of "an actual effect on interstate commerce." *United States v. Diaz*, 248 F.3d 1065, 1084 (11th Cir. 2001). Stepherson insists that the government presented insufficient evidence that his robbery of Van Wyk was

likely to affect or had an actual effect on interstate commerce.  Because he raises this issue for the first time on appeal, we review for plain error.

The Hobbs Act defines "commerce" broadly, covering "all commerce between any point in a State . . . and any point outside thereof."  18 U.S.C. § 1951(b)(3).  And the Supreme Court's interpretation of the Hobbs Act has followed the statute's broad terms, recognizing that the Act manifests Congress's intent to "use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence."  *Stirone v. United States*, 361 U.S. 212, 215 (1960).  To that end, our Court has held that though convictions under the Act require proof of an effect on interstate commerce, the "effect need not be substantial, and even a minimal impact on interstate commerce is enough to support a Hobbs Act conviction."  *United States v. Smith*, 967 F.3d 1196, 1209 (11th Cir. 2020) (quotation omitted).

The Hobbs Act most commonly applies to robberies of businesses.  But robberies of individuals may also qualify.  In *Diaz*, we identified three types of circumstances where a robbery of an individual would affect commerce, such as when "(1) the crime depletes the assets of an individual who is directly engaged in interstate commerce; (2) the crime causes the individual to deplete the assets of an entity engaged in interstate commerce; *or* (3) the number of individuals victimized or the sums involved are so large that there will be a cumulative impact on interstate commerce."  *Diaz*, 248 F.3d at 1085.  These are merely examples—an "effective barometer for measuring a defendant's actions and their effect on interstate commerce"—but *Diaz* is not a restrictive test.  *Smith*, 967 F.3d at 1208

6

(quotation omitted).  Instead, to determine whether robbery of an individual qualifies under the Hobbs Act, we must make a "fact-specific inquiry into the directness and likely extent of any impact on interstate commerce." *Id*. (quotation omitted).

The government's case rests on an inference that Van Wyk *would have* spent more money in the hours leading up to his departure from the United States, so he was likely interrupted from engaging in interstate commerce.  Stepherson argues that we have never held that such a hypothetical connection to interstate commerce can qualify for Hobbs Act robbery.

But even if that's so, neither have we held that such a connection falls outside the Hobbs Act's broad net.  And that proves fatal to Stepherson's appeal.  Recall that we are reviewing this argument for plain error and for an error to be "plain enough for the plain error rule, an asserted error must be clear from the plain meaning of a statute or constitutional provision, or from a holding of the Supreme Court or this Court." *United States v. Rodriguez*, 627 F.3d 1372, 1381 (11th Cir. 2010).  Stepherson has identified no case from this Court or the Supreme Court that place these minimal effects on interstate commerce outside prosecution under the Hobbs Act.  So we cannot say that the error below was plain.

B.

Stepherson next insists that there was insufficient evidence to convict him because the government's main witness—the victim, Van Wyk—"presented two alternative statements for the same crime," one at the police station and one at trial.  Such inconsistencies, he believes, rendered Van Wyk not credible.  He also argues

7

that because of this inconsistent testimony, the district court should have granted him a new trial.

Credibility decisions, though, are matters for the jury, and when we are reviewing a challenge to the sufficiency of the evidence, we assume that the jury made all credibility decisions "in the way that supports the verdict." *United States v. Thompson*, 473 F.3d 1137, 1142 (11th Cir. 2006). Even though Van Wyk's story differed in some respects—which he admitted during cross-examination—the jury "by their verdict, at the very least, found [him] to be a credible witness." *See United States v. Bazemore*, 41 F.3d 1431, 1435 n.9 (11th Cir. 1994).

Nor did the district court err in denying Stepherson's motion for a new trial based on Van Wyk's inconsistent testimony. When a defendant moves for a new trial based on the weight of the evidence, the court "need not view the evidence in the light most favorable to the verdict," but "may weigh the evidence and consider the credibility of the witnesses." *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985). At the same time, such motions are "not favored." *Id*. at 1313. Courts are instructed to "grant them sparingly and with caution, doing so only in those really exceptional cases," where the evidence weighs "heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Id*. Indeed, courts have granted new trials based on the weight of the evidence "only where the credibility of the government's witnesses had been impeached and the government's case had been marked by uncertainties and discrepancies." *Id*.

True, portions of Van Wyk's testimony conflicted with what he originally told the police. For instance, Van Wyk originally told the police that he was forced

8

into the alley by a large man with dreadlocks—Stepherson's co-defendant, Vidyapati El.  But a video presented at trial showed that Van Wyk entered the alley voluntarily.  Yet despite these minor inconsistencies, Van Wyk's testimony was consistent in other important respects—including his description of the robbers and the items stolen, and his testimony about one the robbers threatening him with a gun.

Moreover, it was corroborated by other testimony and evidence.  A surveillance video showed Van Wyk and Hardy entering the alley with Stepherson and two other men, Stepherson leaving with Hardy, and then all three robbers leaving for good, with Van Wyk and Hardy fleeing shortly after.  Stepherson even identified himself and his co-defendant, El, in this surveillance video.  And police officers corroborated other parts of Van Wyk's account, such as the time and place that he reported the robbery at the police station.

We are not persuaded that Van Wyk's testimony was, on the whole, not credible.  And the government's case was hardly "marked by uncertainties and discrepancies," making it a "miscarriage of justice" to allow the jury's verdict to stand.  *Martinez*, 763 F.2d at 1313.  The district court therefore did not abuse its discretion by denying Stepherson a new trial.[1]

C.

---

[1] In passing, Stepherson also seems to suggest that he is entitled to a new trial because of the jury's supposedly inconsistent verdicts—acquitting him of robbing Hardy while convicting him of robbing Van Wyk.  But a "jury's verdicts are insulated from review on the ground that they are inconsistent, as long as sufficient evidence supports each finding of guilt." *United States v. Albury*, 782 F.3d 1285, 1295 (11th Cir. 2015) (cleaned up).

Stepherson also believes that the district court abused its discretion by admitting evidence of a "dissimilar uncharged Florida robbery conviction" which occurred ten years before the instant offense.  He claims that the government improperly used this evidence as "character assassination, showing propensity and bad character," in a prejudicial manner.  We disagree.

Under Rule 404(b) of the Federal Rules of Evidence, the government may not provide evidence of a crime or conviction to "prove a person's character" as a way of showing that the person acted in conformity with that character.  Fed. R. Evid. 404(b)(1).  But it may offer this evidence to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  This Court has created a three-prong test to determine the admissibility of 404(b) evidence: (1) the evidence must be relevant for some reason other than proving the defendant's character; (2) the "act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act"; and (3) the "probative value of the evidence must not be substantially outweighed by its undue prejudice" or by "confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  *United States v. Matthews*, 431 F.3d 1296, 1310–11 (11th Cir. 2005) (quotation omitted); Fed. R. Evid. 403.  The government's evidence meets all three prongs.

Though Stepherson's briefing seems to focus on why this evidence did not confirm his "identity" under Rule 404(b), the government actually used the earlier conviction to prove intent.  Stepherson, by pleading not guilty, made "intent a

material issue which imposes a substantial burden on the government to prove," which it may do by providing "qualifying Rule 404(b) evidence." *United States v. Edouard*, 485 F.3d 1324, 1345 (11th Cir. 2007) (quotation omitted). When the government offers a prior conviction to prove intent, "its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses." *Id.* (quotation omitted). If the state of mind for both offenses is the same, the first prong of the Rule 404(b) test is satisfied. *Id.* Here, the elements for Florida robbery and Hobbs Act robbery are very similar, except for the added commerce element in the Hobbs Act. *Compare* Fla. Stat. § 812.13(1), *with* 18 U.S.C. § 1951(b)(1). And the two acts require the same state of mind, namely, an intent to knowingly take someone else's property by means of actual or threatened force or violence. *See United States v. Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002); Fla. Stat. § 812.13(1).

Next, because the parties stipulated that the prior conviction occurred, this "eliminated the government's burden to produce evidence" of the conviction. *United States v. Hardin*, 139 F.3d 813, 817 (11th Cir. 1998). So the second prong was satisfied.

The government also satisfied the third prong, because the probative value of admitting the conviction was not outweighed by prejudice. We have "generally held" that a prior conviction is "highly probative" if the prior offense requires the same intent as the charged offense and if "these acts are proximate in time to the charged offenses." *Baker*, 432 F.3d at 1205 (quotation omitted). The two offenses did share the same intent requirement, and, while there was a ten-year gap between

11

the Florida conviction and this charged offense, the significance of this intervening time period is diminished because Stepherson was in prison for six of those years. *See United States v. Lecroy*, 441 F.3d 914, 926 (11th Cir. 2006). Furthermore, the district court "cured any possible unfair prejudice" by the Court's repeated limiting instructions to the jury that Stepherson's conviction could only be considered for the limited purpose of determining intent. *See United States v. Brown*, 665 F.3d 1239, 1248 (11th Cir. 2011) (cleaned up). We therefore cannot say that the district court abused its discretion by admitting the government's Rule 404(b) evidence.

## D.

Stepherson's final challenge to his convictions is that he was wrongly convicted of brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c), because he insists that Hobbs Act robbery is not a predicate offense. But as Stepherson himself acknowledges in his brief, this argument is squarely foreclosed by our precedent. *See United States v. St. Hubert*, 909 F.3d 335, 351–52 (11th Cir. 2018); *In re St. Fleur*, 824 F.3d 1337, 1341 (11th Cir. 2016).

## E.

Stepherson raises one final objection—this time, to his sentence. At sentencing, the district court classified Stepherson as a career offender under U.S.S.G. § 4B1.1(a)(2). But to qualify for this enhancement, the defendant's current offense must be either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a)(2). And this Court recently determined that Hobbs

Act robbery is *not* a "crime of violence" as defined under the Sentencing Guidelines. *United States v. Eason*, 953 F.3d 1184, 1194–95 (11th Cir. 2020). Stepherson raises *Eason* for the first time on appeal, so we review for plain error. This error, though, was plain and affected Stepherson's substantial rights. *See United States v. Jones*, 743 F.3d 826, 829–30 (11th Cir. 2014) (an "intervening decision by this Court or the Supreme Court squarely on point may make an error plain" (quotation omitted)); *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346–47 (2016). Moreover, a "faulty enhancement" seriously affects the fairness, integrity, and public reputation of judicial proceedings. *United States v. Bankston*, 945 F.3d 1316, 1320 (11th Cir. 2019). The government also admits that Stepherson's career offender sentence must be vacated. We will therefore vacate and remand to the district court for resentencing.

\*    \*    \*

The evidence presented at trial was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that Stepherson was guilty of conspiring to commit and committing Hobbs Act robbery. And we reject Stepherson's other arguments against his convictions. However, the district court did err in classifying Stepherson as a career offender under the Sentencing Guidelines. We therefore affirm Stepherson's convictions, vacate his sentence, and remand for resentencing.

**AFFIRMED in part, VACATED in part, and REMANDED.**