[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14731
_____

D.C. Docket No. 5:13-cr-00018-RS-4


UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

ALEJANDRO BARRON-SOTO,
a.k.a. Tano,
HECTOR HERNANDEZ,

Defendants–Appellants.

_____

Appeals from the United States District Court
for the Northern District of Florida
_____

(April 26, 2016)

Before ROSENBAUM, JULIE CARNES, and DUBINA, Circuit Judges.

DUBINA, Circuit Judge:

Alejandro Barron-Soto ("Barron-Soto") and Hector Hernandez ("Hernandez") appeal their jury convictions on one count of conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 846; one count of possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 18 U.S.C. § 2; and, for Barron-Soto, one count of illegal reentry after deportation, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(1).

Before a joint trial, Hernandez filed a motion to suppress evidence law enforcement officers obtained from a warrantless search of his cell phone. The district court denied the motion following a suppression hearing. Hernandez challenges that denial on appeal based on the Supreme Court's subsequent decision in *Riley v. California*, 573 U.S. ___, 134 S. Ct. 2473 (2014). Hernandez also argues that the district court erred by admitting evidence of his prior drug trafficking conviction at trial under Fed. R. Evid. 404(b)(2) and 403. Finally, Hernandez argues that there was insufficient evidence to support the jury's verdict, and the district court's denial of his motion for judgment of acquittal was in error. Barron-Soto similarly argues on appeal that the evidence law enforcement officers obtained as the result of a warrantless search of his cell phone, and other evidence, was erroneously admitted.

2

Previously, we ordered the district court to conduct limited fact finding as to whether law enforcement was prompted by or would have sought the search warrant for Hernandez and Barron-Soto's cell phones despite the initial warrantless search of those phones. After reviewing the briefs, having the benefit of oral argument, and reviewing the district court's order on remand, we affirm.

## I.   BACKGROUND

*A. Facts*

On the morning of March 17, 2013, law enforcement officers were conducting surveillance at the Cancun's restaurant in Chipley, Florida. DEA Special Agent John Manna ("Agent Manna") was in contact with a confidential informant who arranged a delivery of methamphetamine to the restaurant with defendant Reyes-Barragan. During surveillance, agents witnessed defendants Barron-Soto and Heredia-Barron arrive at Cancun's in a red Mazda and defendant Hernandez and a female companion arrive in a silver Volkswagen. The defendants exited the vehicles and walked to the rear of the restaurant. Barron-Soto confirmed to Reyes-Barragan that the expected methamphetamine was present, and agents next observed Hernandez drive the silver Volkswagen behind the restaurant. Another defendant entered the Volkswagen and lights flashed, leading law enforcement to believe there was a manipulation of an electronic concealed trap occurring in the vehicle. After ten minutes, Barron-Soto and Heredia-Barron

3

departed in the red Mazda and Reyes-Barragan told the informant over the phone that the methamphetamine was delivered.

Florida Highway Patrol stopped Heredia-Barron and Barron-Soto at Agent Manna's request. Barron-Soto attempted to flee from the vehicle but was apprehended by officers. A drug dog subsequently alerted to the odor of narcotics in the red Mazda. Heredia-Barron and Barron-Soto's cell phones were seized. Meanwhile, Hernandez and the female companion exited the restaurant in the opposite direction, driving the silver Volkswagen. Florida Highway Patrol, again at Agent Manna's direction, stopped the Volkswagen and detained Hernandez and the female companion.

Law enforcement next made contact with Reyes-Barragan at the rear of the restaurant and obtained consent to search the restaurant. The search uncovered six containers that contained approximately 3.6 kilograms of methamphetamine inside a storage shed at the restaurant. Hernandez, the female companion, and the silver Volkswagen were brought back to the restaurant where a drug dog alerted to narcotics around the vehicle. Law enforcement officers found an empty hidden trap used to hide drugs near the rear passenger seat of the Volkswagen.

Agent Manna directed another agent to conduct a warrantless search of the cell phones seized from Hernandez and Barron-Soto during their arrests, citing concerns that other conspirators remained at large and could remotely erase data

4

from the phones.  Officers took photographs of the observations of the cell phones during the search, including text messages, incoming and outgoing calls, and numerous contacts between the four indicted defendants—Hernandez, Reyes-Barragan, Barron-Soto, and Heredia-Barron.

Agent Manna later applied for and received a search warrant to search the content of all four defendants' phones.  Agent Manna stated in his warrant affidavit that in April 2012 the DEA began investigating a drug trafficking organization that was transporting cocaine, marijuana, and methamphetamine from Texas and Georgia to Northern Florida.  Agent Manna then described his investigation of Reyes-Barragan, including the use of a confidential informant and the events at Cancun's restaurant on March 17, 2013.  In a section with the heading "Probable Cause for all Subject Telephones," Agent Manna stated:

> Based on my training and experience, I have learned that cellular telephones have the ability to store information in them for long periods of time.  I know that people involved in the distribution and sale of drugs will often store names and numbers in the phone directory and speed dialing function of their phones.  I have also learned that persons involved in such illicit activities commonly communicate with customers or sources of supply through the text or "SMS" system of their cellular telephones.
> Because the Subject Telephones were recovered from subjects who were arrested relative to the seizure of methamphetamine in the Northern District of Florida, there is probable cause to believe that the Subject Telephones will contain evidence of narcotics trafficking.

The warrant affidavit did not mention any evidence obtained during the warrantless search of Hernandez and Barron-Soto's cell phones.  The affidavit did

5

include post-arrest statements made by the four defendants and the results of a warrantless search of Reyes-Barragan's cell phone.

### B. Procedural History

#### 1. Motion to Suppress

Hernandez filed a pretrial motion to suppress evidence the Government obtained as a result of the warrantless search of his cell phone, arguing that the law was unsettled as to whether a suspect's cell phone could be lawfully searched incident to his arrest and that there were no reasonable exigent circumstances to justify the search of his phone. The Government responded that the search of Hernandez's cell phone was justified as a search incident to arrest, or, in the alternative, as a search conducted pursuant to probable cause and exigent circumstances. Agent Manna testified at the suppression hearing regarding the events leading up to and following the defendants' arrests, including the search of the cell phones and concern that the phones could be remotely wiped prior to the extraction of relevant data. Hernandez argued that these concerns were unreasonable given the circumstances of the four defendants' arrests and the officers' ability to disable the cell phones.

The district court denied Hernandez's motion to suppress. In a written order, the court found that based on Agent Manna's training, experience, and the facts known to him as a result of his investigation, Agent Manna reasonably

6

believed:  (1) that the defendants may have used the cell phones found in their possession on the morning of their arrest to communicate with each other or others participating in the methamphetamine delivery, and (2) that the phones may have contained evidence of the crime under investigation.  Accordingly, the district court found that Agent Manna had probable cause to believe evidence to support a crime would be found in Hernandez's cell phone.  In addition, the court determined that law enforcement's concern that a delay in the search of the phones may have resulted in a loss of evidence created exigent circumstances justifying the seizure and immediate search of the cell phones.

Barron-Soto did not file a pretrial motion to suppress.  However, at the joint trial for Barron-Soto and Hernandez, Hernandez reiterated his objection to the admission of evidence from the warrantless search of his cell phone.  Barron-Soto then raised the same objection relative to the warrantless search of his cell phone, which the court overruled by adopting the previous ruling on Hernandez's motion to suppress.

2. <u>Appeal</u>

This panel heard oral argument on the instant appeal on November 19, 2015.

Hernandez and Barron-Soto[1] argued that the district court erred in determining that

the possibility of a remote wipe was an exigent circumstance in light of the

Supreme Court's decision in *Riley*, 573 U.S. ___, 134 S. Ct. 2473.  We agree, and

the Government did not dispute that the district court erred under *Riley*.  However,

the Government argued that the evidence obtained from Hernandez and Barron-

Soto's cell phones was admissible under the independent source doctrine, as the

officers would have applied for and obtained a warrant without the preceding

warrantless search.

---

[1]     Unlike his co-defendant Hernandez, Barron-Soto did not file a timely pretrial motion to suppress, but instead waited until after trial had begun to assert that evidence discovered during the search of his cell phone should be suppressed.  *See* Fed. R. Crim. P. 12(b)(3)(C) and 12(c)(3). As a general rule, we review for plain error a district court's ruling on an untimely motion that is required to be filed prior to trial pursuant to Fed. R. Crim. P. 12(b)(3).  *See United States v. Sperrazza*, 804 F.3d 1113, 1121 (11th Cir. 2015); *accord United States v. Bowers*, 811 F.3d 412, 421 (11th Cir. 2016).  Yet in this case, the district court was not hearing for the first time at trial a challenge to the search.  Instead it had earlier held a lengthy hearing on Hernandez's timely motion to suppress and had issued a written ruling denying that motion.  Barron-Soto's request that he be permitted to preserve this suppression issue for appeal purposes was essentially a request that he be allowed to adopt his co-defendant's earlier motion.  Because the district court permitted him to do so and because Hernandez was entitled to de novo review of the court's ruling on his timely suppression motion, we see no good reason why Barron-Soto, who was permitted to adopt Hernandez's motion, should not receive the same level of review of the district court's order.

Barron-Soto also contends on appeal that his post-arrest statements should have been suppressed because they were not knowing and voluntary and therefore their admission violated his Fifth Amendment rights.  Because Barron-Soto never objected to admission of these statements before the district court, we review the claim under a plain error standard.  *See Sperrazza*, 804 F.3d at 1119.  We find no plain error by the district court in failing, *sua sponte*, to disallow admission of Barron-Soto's post-arrest statements.

The independent source doctrine involves a two-part analysis: (1) whether, after excising from the search warrant affidavit information gained during the illegal entry, the remaining information supported a finding of probable cause, and (2) whether the officer's decision to obtain a search warrant was "prompted by" what he observed during the illegal entry. *United States v. Noriega*, 676 F.3d 1252, 1260 (11th Cir. 2012). In ruling on the motion to suppress, the district court did not explicitly find that law enforcement would have sought a warrant had they not first conducted the warrantless search of the codefendants' cell phones. Because this determination involves a question of fact, we entered an order directing the district court to conduct limited fact finding as to "whether law enforcement was 'prompted by' or would have sought the search warrant for Hernandez and Barron-Soto's cell phones despite the initial warrantless search." Order, *United States v. Barron-Soto*, No. 13-14731 (11th Cir. Dec. 15, 2015); *see Murray v. United States*, 487 U.S. 533, 543, 108 S. Ct. 2529, 2536 (1988) (whether an officer was prompted to seek a warrant by information gained in an illegal search is a question of fact); *Noriega*, 676 F.3d at 1263.

The district court conducted a hearing and examined Agent Manna, whose affidavit supported the warrant to search Hernandez and Barron-Soto's cell phones. After hearing Agent Manna's testimony and arguments from the parties, the district court found that the "request for a warrant to search Hernandez's and

9

Barron-Soto's phones was *not* prompted by information learned from the initial warrantless search of the phones, [and] that law enforcement would have sought the search warrant for Hernandez's and Barron-Soto's cell phone despite the initial limited warrantless search of the phones." With these findings we may now address the independent source doctrine and remaining issues on appeal.

## II. STANDARDS OF REVIEW

"We review a district court's denial of a motion to suppress evidence for clear error as to factual findings and de novo as to its application of the law." *United States v. Watkins*, 760 F.3d 1271, 1282 (11th Cir. 2014). "We may affirm the denial of a motion to suppress on any ground supported by the record." *Id.* We review de novo whether a search warrant affidavit established probable cause. *United States v. Jiminez*, 224 F.3d 1243, 1248 (11th Cir. 2000). We review a district court's decision to admit evidence for abuse of discretion. *Id.* at 1249.

## III.  DISCUSSION

### A.  Independent Source Doctrine

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. However, in the event the government violates the Fourth Amendment in conducting an illegal search, "[t]he independent source doctrine allows admission of evidence that has been discovered

10

by means wholly independent of any constitutional violation." *Nix v. Williams*, 467 U.S. 431, 443, 104 S. Ct. 2501, 2508 (1984).

We apply a two-part analysis "to determine whether evidence seized during the execution of the warrant was discovered independent of the initial [illegal] entry and is therefore admissible regardless of whether the first entry violated the Fourth Amendment." *Noriega*, 676 F.3d at 1260. The first step is to excise from the search warrant affidavit any information gained during the alleged illegal entry and determine whether the remaining information supports a finding of probable cause. *Id.* The second step is to determine whether the officer's decision to obtain a search warrant was "prompted by" what he observed during the illegal entry. *Id.* This is a question of fact. *See Murray*, 487 U.S. at 543, 108 S. Ct. at 2536.

In the instant case, the warrant affidavit did not include any information learned from the warrantless search of Hernandez and Barron-Soto's cell phones. Therefore we do not excise any information, and we review the affidavit de novo to determine whether there was probable cause to support a search warrant for the codefendants' cell phones. "A sufficient basis for probable cause for a search exists when under the totality of the circumstances there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Noriega*, 676 F.3d at 1261 (quoting *United States v. Lopez*, 649 F.3d 1222, 1245 (11th Cir. 2011)). "Fair probability" is determined by whether the facts and circumstances

11

would lead a reasonably prudent person to believe the place to be searched contains evidence of a crime. *Id.*

Here, the warrant affidavit submitted by Agent Manna stated: (1) that law enforcement expected a methamphetamine delivery at Cancun's restaurant at 9:00 a.m. on March 17, 2013; (2) that Hernandez, in one car, and Barron-Soto in another car, arrived at the restaurant around that time and appeared to drop something off at the back of the restaurant; (3) that soon thereafter, Reyes-Barragan called the confidential informant to say he had received the expected methamphetamine; (4) that Hernandez appeared to flee the restaurant parking lot once he saw a highway patrol car following Barron-Soto's car; (5) that, after Hernandez was stopped and detained, officers found a hidden compartment in his car; and (6) that a drug dog deployed on the car alerted positive for the odor of narcotics. Further, Agent Manna stated in his affidavit that, in his experience as a law enforcement officer, drug traffickers often use cell phones to coordinate drug deals and cell phones are often a source of valuable evidence. We conclude that, regardless of any information learned from the warrantless search, the information set forth in Agent Manna's warrant affidavit clearly sets out facts and circumstances that support probable cause to issue a search warrant for the codefendants' cell phones.[2]

---

[2] Barron-Soto also contends that officers lacked probable cause to stop his vehicle because he

The second step of the independent source analysis asks whether law enforcement's decision to seek a search warrant was "prompted by" what was observed during the warrantless search. *See Noriega*, 676 F.3d at 1260–61. On limited remand, the district court found that Agent Manna's decision to apply for a search warrant in this case was not prompted by the warrantless search of the codefendants' cell phones.

In light of the district court's finding and our conclusion that the information in the warrant affidavit supported probable cause to issue a search warrant for the codefendants' cell phones, we conclude that the evidence obtained from the execution of the search warrants was admissible under the independent source exception to the exclusionary rule. Therefore, notwithstanding the Supreme Court's decision in *Riley*, we affirm the district court's order denying Hernandez and Barron-Soto's motions to suppress. *See Watkins*, 760 F.3d at 1282 (stating that the court may affirm a district court's decision to grant a motion to suppress for any reason supported by the record).

---

had not committed any traffic violation. This argument is meritless. Based on the above facts, the investigating officers had probable cause to believe that Barron-Soto and his codefendants were involved in methamphetamine trafficking. Accordingly, there was probable cause to stop Barron-Soto's vehicle. *See United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991) (en banc) (noting that probable cause exists when there is a "fair probability that contraband or evidence of a crime will be found in a particular place") (internal quotations marks omitted).

13

## B. Rule 404(b) Evidence

Hernandez argues that evidence of his prior 2006 drug trafficking conviction was inadmissible.   Hernandez argues that, other than drug possession, the prior offense and the instant offenses were dissimilar in that:  (1) the 2006 offense involved marijuana, whereas the charged offenses involved methamphetamine; (2) the 2006 offense involved only .38 kilograms of drugs, whereas the instant offenses involved over 3 kilograms; (3) in 2006, the drugs were hidden in the gas tank of a truck, whereas in the instant case, the drugs were wrapped in plastic and placed inside a car; and (4) in the prior case, he admitted that he had been paid $10,000 to transport a truck from Mexico to Georgia and that he believed it contained drugs based on the amount of money he was paid, whereas in the instant case he maintained his innocence.  Hernandez also asserts that the probative value of the evidence was outweighed by the risk of undue prejudice, especially considering that the prior offense had occurred over seven years prior.

Rule 404(b) of the Federal Rules of Evidence provides that evidence of a crime, wrong, or other act is inadmissible to prove that the person acted in accordance with his character on a particular occasion.  Fed. R. Evid. 404(b)(1). However, such evidence may be admissible to prove motive or intent.  Fed. R. Evid. 404(b)(2).  To be admissible under Rule 404(b), the evidence must be (1) relevant to one of the enumerated issues other than the defendant's character, (2)

supported by sufficient evidence to allow a jury to determine that the defendant committed the act, and (3) not unduly prejudicial under the standard set forth in Rule 403. *United States v. Chavez*, 204 F.3d 1305, 1317 (11th Cir. 2000). Under Rule 403, the district court may exclude relevant evidence if its probative value is "substantially outweighed" by a danger of unfair prejudice, confusing the issues, or misleading the jury. Rule 403 is an extraordinary remedy to be used sparingly. *United States v. Meester*, 762 F.2d 867, 875 (11th Cir. 1985).

In a conspiracy case, a defendant's "not guilty plea renders the defendant's intent a material issue." *United States v. Matthews*, 431 F.3d 1296, 1311 (11th Cir. 2005) (internal quotation marks omitted). "Evidence of prior drug dealings is highly probative of intent to distribute a controlled substance, as well as involvement in a conspiracy." *United States v. Cardenas*, 895 F.2d 1338, 1344 (11th Cir. 1990) (quoting *United States v. Hitsman*, 604 F.2d 443, 448 (5th Cir. 1979)). Although the amount of time between the prior offense and charged offense may affect the probative value of the prior offense, the district court is afforded broad discretion to determine whether the offense is too remote to be probative. *Matthews*, 431 F.3d at 1311–12 (citations omitted).

The district court did not abuse its discretion by admitting evidence related to Hernandez's prior drug offense. Hernandez's not guilty pleas put his intent directly at issue, and prior drug offenses are highly probative of the crimes charged

15

against Hernandez.  Furthermore, Hernandez's contention that the prior drug offense was unduly prejudicial because of factual dissimilarities—drugs transported for a third party, a smaller amount and different type of drugs, and a different method of concealment—is unavailing.  *See, e.g.*, *Cardenas*, 895 F.2d at 1344 (different types of drugs, amounts, or locations did not substantially prejudice the defendant so as to warrant exclusion of prior drug charge).  Accordingly, Hernandez has not shown that the court abused its discretion admitting evidence of his prior charge or determining that the probative value of the evidence outweighed the risk of undue prejudice.

### C.  Sufficiency of the Evidence

On appeal, Hernandez argues that the Government provided insufficient evidence to prove that he knowingly joined a conspiracy to possess methamphetamine with the intent to distribute because no witness testified that he was aware of or participated in the agreement to distribute methamphetamine and there was no evidence that he was involved in unloading the drugs.  He also contends that the Government provided insufficient evidence to prove that he knowingly possessed methamphetamine with the intent to distribute.  In particular, the Government provided no evidence that he knew about the methamphetamine that was delivered, that he intended to sell or deliver it to anyone, that he put the

methamphetamine in the car he was driving, or that he expected to make money from the transaction.

"To uphold the denial of a motion for judgment of acquittal, we need only determine that a reasonable fact-finder could conclude that the evidence established the defendant's guilt beyond a reasonable doubt." *United States v. Hansen*, 262 F.3d 1217, 1236 (11th Cir. 2001) (internal quotation marks omitted). "[W]e examine the evidence in the light most favorable to the government and resolve all reasonable inferences and credibility evaluations in favor of the jury's verdict." *United States v. Massey*, 89 F.3d 1433, 1438 (11th Cir. 1996).

To sustain a conviction under 21 U.S.C. § 846, the government must prove (1) that an illegal agreement existed to possess with intent to distribute a controlled substance; (2) that the defendant knew of the agreement; and (3) that the defendant knowingly and voluntarily joined the agreement. *United States v. Isnadin*, 742 F.3d 1278, 1305 (11th Cir. 2014). To sustain a conviction under 21 U.S.C. § 841(a)(1), the government must prove that the defendant "had knowing possession of the drugs and an intent to distribute them." *United States v. Cochran*, 683 F.3d 1314, 1322 (11th Cir. 2012).

While the Government did not provide direct evidence of Hernandez's participation in the agreement to possess with intent to distribute methamphetamine or of his knowing possession and intent to distribute

methamphetamine, it provided significant circumstantial evidence of those elements.  Specifically, the jury heard testimony that:  (1) Reyes-Barragan told a police informant he would have 2–3 kilograms of methamphetamine delivered to Cancun's restaurant at 9:00 a.m. on March 17, 2013; (2) Hernandez met Barron-Soto and Heredia-Barron in Troy, Alabama, on the evening of March 16, 2013; (3) earlier, Barron-Soto was in contact with Reyes-Barragan about delivering methamphetamine; (4) Hernandez, in one car, and Barron-Soto and Heredia-Barron in another car, arrived at Cancun's restaurant at 9:07 a.m. on March 17, 2013; (5) the three men met Reyes-Barragan behind the restaurant, where he asked whether they brought the drugs, and Barron-Soto replied in the affirmative; (6) Hernandez then returned to his car and drove it behind the restaurant;  (7) in Hernandez's presence, Heredia-Barron unloaded methamphetamine from the car Hernandez had driven; (8) Reyes-Barragan then told Hernandez, Barron-Soto, and Heredia-Barron that he would pay them for the methamphetamine after the buyer came with the money; and (9) when Hernandez saw a highway patrol car following Barron-Soto's car, he drove away in the opposite direction.

Finally, the Government also presented evidence that Hernandez had a prior conviction for drug trafficking, which the jury could weigh against any inference that Hernandez had no knowledge of the drugs in his car or lacked the intent to

18

possess and distribute them.  Based on this evidence, we conclude that a reasonable fact-finder could have found Hernandez guilty beyond a reasonable doubt. Accordingly, the district court did not err in denying Hernandez's motion for judgment of acquittal.

## IV.    CONCLUSION

For the reasons discussed above, we affirm Barron-Soto's and Hernandez's convictions.

AFFIRMED.