[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15401
Non-Argument Calendar
_____

D.C. Docket No. 4:14-cr-00077-MW-CAS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FREDERICK BUSH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(December 21, 2016)

Before JORDAN, JULIE CARNES, and ANDERSON, Circuit Judges.

PER CURIAM:

Frederick Bush appeals his conviction at trial for possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  On appeal, he first argues that the district court abused its discretion by admitting testimony regarding his involvement in three earlier controlled drug sales arranged by the Leon County Sheriff's Office.  Second, he contends that the court abused its discretion by admitting a photograph seized from his cell phone, allegedly depicting crack cocaine.  For ease of reference, we will address each point in turn.

### (1) The Controlled Buys

Generally, we review a district court's evidentiary rulings for abuse of discretion.  *United States v. Troya*, 733 F.3d 1125, 1131 (11th Cir. 2013).  However, a pre-trial objection does not preserve the issue for appeal; a party must properly object at trial to preserve the issue.  *United States v. Brown*, 665 F.3d 1239, 1248 (11th Cir. 2011).  If the issue was not preserved by a proper objection at trial, we only review for plain error.  *Id*.  Additionally, the harmless error standard applies to erroneous evidentiary rulings.  *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005).  An error is harmless unless it had a substantial influence on the case's outcome or leaves a grave doubt as to whether the error affected the outcome.  *Id*.  When the erroneously admitted evidence was not

integral to the government's case, it was likely harmless. *See id.* Likewise, error may be harmless when abundant evidence supports the government's case. *See United States v. Sanders*, 668 F.3d 1298, 1315 (11th Cir. 2012).

Because the standard of review will not change our resolution of Bush's appeal, we will assume without deciding that he sufficiently preserved his arguments in the district court, and we will review them for abuse of discretion.

Rule 404(b) does not apply when evidence of a prior offense is intrinsic to the charged offense. *See United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007). Evidence of another crime is intrinsic when (1) the uncharged offense arose out of the same transaction or series of transactions as the charged offense, (2) it is necessary to complete the story of the crime, or (3) it is inextricably intertwined with the evidence regarding the charged offense. *See id.* Evidence is inextricably intertwined when it tends to corroborate, explain, or provide necessary context for evidence regarding the charged offense. *See United States v. Jiminez*, 224 F.3d 1243, 1250 (11th Cir. 2000).

Even if evidence of other crimes is extrinsic, it may be admissible for another purpose, such as to demonstrate motive, intent, absence of mistake, or lack of accident. Fed. R. Evid. 404(b)(2). To be admissible, Rule 404(b) evidence must (1) be relevant to one of the enumerated issues other than the defendant's character, (2) be supported by sufficient evidence to allow a jury to determine that

3

the defendant committed the act, and (3) not be unduly prejudicial under the standard set forth in Rule 403. *United States v. Chavez*, 204 F.3d 1305, 1317 (11th Cir. 2000).

Regarding the first prong of the Rule 404(b) test, a criminal defendant makes his intent relevant by pleading not guilty. *United States v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998). Additionally, evidence that a defendant engaged in similar behavior in the past makes it more likely that he did so knowingly, and not because of accident or mistake, on the current occasion. *See United States v. Jernigan*, 341 F.3d 1273, 1281-82 (11th Cir. 2003). As to the second prong of the Rule 404(b) test, there is sufficient proof of the other acts if a jury could find by a preponderance of the evidence that the defendant committed the act. *See Edouard*, 485 F.3d at 1345. A single witness's uncorroborated testimony can provide an adequate basis for a jury to find that the prior act occurred. *See United States v. Barrington*, 648 F.3d 1178, 1187 (11th Cir. 2011). Under the third prong, we conduct a Rule 403 analysis to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *See United States v. Baron-Soto*, 820 F.3d 409, 417 (11th Cir. 2016).

All evidence, whether intrinsic or extrinsic, must satisfy the requirements of Rule 403. *Edouard*, 485 F.3d at 1344. Under Rule 403, the district court may exclude relevant evidence if its probative value is "substantially outweighed" by a

4

danger of unfair prejudice. Fed. R. Evid. 403. A prior drug offense is highly probative to counter a defendant's "mere presence" defense and prove his intent. *United States v. Delgado*, 56 F.3d 1357, 1366 (11th Cir. 1995). Temporal remoteness is an important factor in determining probative value. *United States v. Matthews*, 431 F.3d 1296, 1311 (11th Cir. 2005). However, we have not adopted a bright-line rule on the issue, and the appellant bears a heavy burden to establish that the district court erred by admitting a temporally remote offense. *Id*. We have also held that prior drug offenses are unlikely to be highly prejudicial, s*ee Delgado*, 56 F.3d at 1366, and a district court's limiting instruction can reduce the risk of any unfair prejudice, *Edouard*, 485 F.3d at 1346.

The district court did not err in admitting the evidence of the controlled buys, because it constituted intrinsic evidence and, therefore, was not subject to analysis under Rule 404(b). One witness's testimony that Bush may have been involved in crack distribution at the Mahan Drive residence just before October 3 strengthens the link between Bush and the seized drugs. If the jury accepted that witness's testimony and rejected Bush's, it could reasonably infer that Bush was still dealing crack from the Mahan Drive residence on October 3. Thus, Green's testimony regarding the three controlled buys was intrinsic, because it corroborated, explained, and provided necessary context for the charged offense.

5

*See Jiminez*, 224 F.3d at 1250. Because the evidence was intrinsic, it was not subject to a Rule 404(b) analysis. *See Edouard*, 485 F.3d at 1344.

Although the controlled buys were outside the scope of Rule 404(b), the evidence was still subject to a Rule 403 analysis. *See Edouard*, 485 F.3d at 1344. Evidence that Bush had repeatedly engaged in crack sales at the Mahan Drive residence was highly probative to prove Bush's intent in the charged offense and counter his "mere presence" defense. *See Delgado*, 56 F.3d at 1366. The evidence was also unlikely to be highly prejudicial, because the controlled buys were drug offenses. *See id.* Thus, Bush failed to demonstrate that the prejudicial effect of the evidence substantially outweighed its probative value.

Also, even if the controlled buys constituted extrinsic evidence, the district court did not err, because the evidence met the requirements of Rule 404(b). Under the first prong of the analysis, Bush made his intent relevant by pleading not guilty to the charges. *See Zapata*, 139 F.3d at 1358. Evidence that Bush engaged in crack sales at the Mahan Drive residence in August and September made it more likely that he knew crack was present at the residence on October 3, 2014 and intended to sell it. *See Jernigan*, 341 F.3d at 1281-82. For the second prong, the aforementioned witness testified that the cooperating source had money, but no drugs, on his person before he made contact with Bush for the controlled buys. The witness then testified that the source had crack on his person after making

6

contact with Bush.  Thus, the government presented sufficient evidence to allow a jury to determine that Bush sold crack to the source on those dates.  *See Barrington*, 648 F.3d at 1187.  The third prong also favors admission of the evidence.  As discussed above, Rule 403 did not require exclusion of the evidence, because the probative value of the controlled buys was not outweighed by the prejudicial effect.  *See Baron-Soto*, 820 F.3d at 417.

Finally, any error in admitting the evidence of the controlled buys was harmless.  The controlled buys established Bush's past involvement in crack distribution at the Mahan Drive residence.  However, Bush freely admitted to selling crack at the residence at the time the controlled buys occurred.  Other evidence showed that Bush was likely still living at the residence, was alone in the room where much of the evidence was located, had prior convictions for cocaine possession and distribution, had sent incriminating text messages, and confessed the crime to two fellow inmates.  Thus, the evidence was not integral to the government's case, and substantial other evidence supported the conviction.  *See Henderson*, 409 F.3d at 1300; *see Sanders*, 668 F.3d at 1315.

## (2) The Photograph

Rule 404(b) applies to the admission of the "crack donut" photograph because it constituted extrinsic evidence of a prior crime.  It did not arise from the

7

same transaction or series of transactions of the charged offense, was not necessary to complete the story of the charged offense, and was not inextricably intertwined with the evidence regarding the charged offense. *See Edouard*, 485 F.3d at 1344. The "crack donut" photograph could still be admitted if it met the requirements of Rule 404(b). *See* Fed. R. Evid. 404(b).

Here, the photograph was properly admitted because it met the three requirements of Rule 404(b). First, the photograph demonstrated Bush's past participation in crack manufacturing and, therefore, was relevant to his intent to engage in the charged offense of possession with intent to distribute. *See Jernigan*, 341 F.3d at 1281-82. Second, an additional witness testified that Bush told the story of making the crack donut and taking a picture of it. A third witness later corroborated the second witness when he testified that a photo of a donut-shaped portion of crack was found on Bush's phone. Thus, the evidence was sufficient to allow the jury to determine that Bush made the donut and took the picture. *See Barrington*, 648 F.3d at 1187. Third, the photograph, like the controlled buys, was highly probative to establish Bush's intent to distribute crack and counter his "mere presence" defense. *See Delgado*, 56 F.3d at 1366. Also like the controlled buys, the "crack donut" was evidence of a drug offense and, therefore, unlikely to be highly prejudicial. *See id*. The court additionally gave limiting instructions in conjunction with the second witness's testimony, further limiting the potential for

8

undue prejudice. *See Edouard*, 485 F.3d at 1346. Therefore, Bush has not demonstrated that the prejudicial effect of the photograph substantially outweighed its probative value.

Moreover, even if the court erred in admitting the photograph, such error was harmless. The photograph helped establish Bush's knowledge of and past involvement in crack manufacturing. However, Bush freely admitted to selling crack prior to his arrest. Other evidence showed that Bush was likely still living at the residence, was alone in the room where much of the evidence was located, had prior convictions for cocaine possession and distribution, had sent incriminating text messages, and confessed the crime to two fellow inmates. Thus, the photograph was not integral to the government's case, and substantial other evidence supported the conviction. *See Henderson*, 409 F.3d at 1300; *see Sanders*, 668 F.3d at 1315. Accordingly, we affirm Bush's conviction.

**AFFIRMED.**