[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13408
Non-Argument Calendar
_____

D.C. Docket No. 4:18-cr-00022-MW-CAS-3

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

vs.

JEFFREY MICHEL,

Defendant – Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(October 22, 2020)

Before WILSON, JORDAN, and BRASHER Circuit Judges.

PER CURIAM:

For acts committed between March 5, 2013, and January 20, 2015, Jeffrey Michel was convicted of conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349; theft of public money, in violation of 18 U.S.C. §§ 641 and 642; and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) and (2). During his trial, the district court admitted, under Rule 404(b) of the Federal Rules of Evidence, certain evidence that had been seized during a traffic stop in Byron, Georgia on May 13, 2016.

On appeal, Mr. Michel argues that the district court erred in admitting that evidence. Following review of the record and parties' briefs, we affirm.

## I

In April of 2014, while responding to a call about a possible battery at a Florida State University dormitory, an officer with the FSU Police Department noticed in the dormitory blank magnetic stripe cards and a device used to transcribe information onto those cards. Considering those items as indicia of fraud, FSU police obtained a search warrant and conducted a search of the dormitory.

During that search, FSU police located, among other things, magnetic stripe cards, a card reader/writer, an iPad, laptops, Western Union cards, documents with the personal identifying information ("PII") of persons who were not the residents of that dormitory, an 8 gigabyte USB drive, U.S. currency, and memory cards. FSU police seized the electronic devices located during the search and transferred them

2

for forensic analysis to the United States Secret Service, which in turn contacted the Internal Revenue Service ("IRS") to analyze the data pulled from the electronic devices.

From those electronic devices, the IRS analyzed the PII of roughly 2,120 individuals for indicia of fraud. Through that analysis and other investigatory actions, the IRS was able to determine that 463 fraudulent tax returns had been filed using the PII of 442 individuals. The PII of individuals had also been used to fraudulently obtain unemployment benefits. The IRS was able to identify the bank accounts to which tax refunds and unemployment benefits had been directed, including one belonging to Mr. Michel.

Based on that information, the IRS interviewed many of the relevant account holders. Three of those account holders told investigators (and would later testify at trial) that they had opened bank accounts at Mr. Michel's behest, given him the account paperwork and debit cards, and been unaware that fraudulent tax refunds and unemployment benefits had been deposited into their accounts. Investigators also discovered that one of those accounts had been used to pay for repairs to a BMW registered in Mr. Michel's name, that fraudulent returns that had been deposited into two of those accounts were subsequently transferred to an H&R Block account opened in Mr. Michel's name, and that fraudulent returns using the PII of other victims had been directly deposited into this H&R Block account.

3

Unrelated to the fraud investigation, on May 13, 2016, Francis Smith, a corporal with the Byron, Georgia Police Department, pulled over a vehicle for two traffic violations. As Corporal Smith would later testify at trial, Johnley Occi was the driver of the car and Mr. Michel was the passenger. Corporal Smith conducted a search of the vehicle and discovered, among other things, two black bags, three laptops, two cell phones, $ 1,500 on Mr. Occi and $ 3,000 on Mr. Michel, and 15 sim cards. The black bags contained roughly $57,500 in cash, Western Union money orders, and a card reader/writer. While searching one of the two bags, Corporal Smith asked Mr. Occi and Mr. Michel to identify its owner. Neither man responded, and they instead began a conversation between themselves at low volume. When Corporal Smith asked them a second time to identify the owner of the bag, Mr. Occi identified himself as the owner.

On May 1, 2018, Mr. Michel, one of the FSU students who resided in the searched dormitory, and another individual were charged in a six-count indictment. Mr. Michel was charged with three of the six counts, (1) conspiracy to commit wire fraud, in violation of 18U.S.C. §§ 1343 and 1349; (2) theft of public money, in violation of 18 U.S.C. §§ 641 and 642; and (3) aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1) and (2).[1]

---

[1] Two other FSU students who resided in the FSU dormitory were charged separately.

4

During the trial, Mr. Michel objected to the admission of the evidence seized during the Georgia traffic stop, on the basis that it was obtained after the charged acts, that it was extrinsic and irrelevant to the charged acts, and that its probative value was substantially outweighed by its prejudice. The United States responded that the electronic data obtained from the devices seized during the Georgia traffic stop was inextricably intertwined with the charged acts because it contained evidence that directly linked Mr. Michel to the charged acts, and thus was not subject to Rule 404. As to the remaining evidence, the United States argued that it was extrinsic but admissible under Rule 404(b) to prove intent, absence of mistake, and motive.

The district court admitted both categories of evidence over Mr. Michel's objection. The district court held that the electronic data was intrinsically intertwined with the charged acts and therefore not subject to Rule 404, while the remaining evidence was extrinsic but admissible under Rule 404(b). We refer to this evidence as the Rule 404(b) evidence.

At trial, the government introduced the Rule 404(b) evidence via the physical evidence itself and testimony from Corporal Smith, prior to which the district court issued a limiting instruction to the jury. Additionally, at the time of the Georgia traffic stop, Mr. Michel was a bus operator with Miami-Dade County, and the Miami-Dade Office of the Inspector General had conducted an administrative

5

investigation into whether Mr. Michel had complied with his obligation to disclose the Georgia traffic stop and any outside employment. At trial, Special Agent James Kennedy testified that during that investigation Mr. Michel stated and signed a sworn statement confirming that during the Georgia traffic stop he had been in possession of approximately $ 70,000 from the sale of a car.

Testifying in his defense, Mr. Michel denied the charges against him and stated that he had been in possession of only $ 46,000 during the Georgia traffic stop. According to Mr. Michel, he had been in possession of that money because he was supposed to purchase a restaurant in Georgia during the trip.

As part of its final jury instructions, the district court gave the jury a second limiting instruction regarding the Rule 404(b) evidence. After deliberations, the jury convicted Mr. Michel on all three counts. The district court sentenced Mr. Michel to concurrent 24-month terms of imprisonment for his convictions for conspiracy to commit wire fraud and theft of public money and a consecutive 24-month term of imprisonment for his conviction for aggravated identity theft.

**II**

We review a district court's decision to admit evidence for an abuse of discretion. *See United States v. Flanders*, 752 F.3d 1317, 1334 (11th Cir. 2014). Accordingly, "we will not reverse a district court's evidentiary ruling in the absence of manifest error." *United States v. Holt*, 777 F.3d 1234, 1264 (11th Cir. 2015).

### III

Under Rule 404(b), evidence of a crime, wrong, or other act to prove a person's character is inadmissible to show that the person acted in accordance with that character on a particular occasion. *See* Fed. R. Evid. 404(b)(1). That evidence, however, "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

For other act evidence to be admissible under Rule 404(b), it must pass a three-part test. First, it must be relevant to one of the issues enumerated in Rule 404(b)(2). *See United States v. Barron-Soto*, 820 F.3d 409, 417 (11th Cir. 2016). Second, there must be sufficient evidence to allow a jury to determine that the defendant committed the other act. *Id.* Third, its probative value must not be substantially outweighed by its undue prejudice, and it also must meet the other requirements of Rule 403. *See United States v. Cochran*, 683 F.3d 1314, 1321 (11th Cir. 2012).

On appeal, Mr. Michel argues that the district court erred *only* in admitting the Rule 404(b) evidence—specifically, the U.S. currency, the car reader, and the money orders. *See* Appellant's Br. at 22. Mr. Michel levels four arguments against the district court's ruling, each of which fails.

Mr. Michel first argues that "the only purpose" for introducing the Rule 404(b) evidence "was to show 'criminal propensity.'" *Id.* at 23. But he does not explain why that is so. The district court admitted the Rule 404(b) evidence to prove, among other things, Mr. Michel's intent. Mr. Michel pled not guilty to the three counts with which he was charged, and we have held that "[i]n a conspiracy case, a defendant's not guilty plea renders the defendant's intent a material issue." *Barron-Soto*, 820 F.3d at 417 (internal quotation marks omitted). Thus, Mr. Michel's conclusory argument, without more, is insufficient for us to hold that the district court manifestly erred in admitting the Rule 404(b) evidence to prove intent.

Mr. Michel next asserts that the Georgia traffic stop "took place . . . more than one year after the purported conspiracy took place." Appellant's Br. at 23. But "the standard for evaluating the admissibility of a subsequent bad act under Rule 404(b) is identical to that for determining whether a prior bad act should be admitted under this Rule." *United States v. Jernigan*, 341 F.3d 1273, 1283 (11th Cir. 2003). Furthermore, "the district court is afforded broad discretion to determine whether the offense is too remote to be probative." *Barron-Soto*, 820 F.3d at 417. For that reason, appellants like Mr. Michel "bear[ ] a heavy burden in demonstrating an abuse of the court's broad discretion in determining if an extrinsic offense is too remote to be probative." *United States v. Matthews*, 431 F.3d 1296, 1311 (11th Cir. 2005) (internal quotation marks omitted).

8

Here, Mr. Michel was indicted for acts taking place through January of 2015, and the Georgia traffic stop took place in May of 2016. That gap is far smaller than those in cases where we have refused to overturn district court rulings admitting other act evidence under Rule 404(b)(2). *See United States v. Lampley*, 68 F.3d 1296, 1300 (11th Cir. 1995) (upholding district court's admission of fifteen-year-old acts). *See also United States v. Pessefall*, 27 F.3d 511, 516 (11th Cir. 1994) (upholding district court's admission of eight-year-old acts). Accordingly, Mr. Michel's remoteness argument also fails.

Mr. Michel also contends that the driver of the vehicle, Mr. Occi, told Corporal Smith during the traffic stop that he owned one of the bags, which contained some of the U.S. currency and the card reader/writer. *See* Appellant's Br. at 23–24. We interpret this argument as going to the sufficiency of evidence prong of the three-part test. Under that prong, other act evidence is admissible under Rule 404(b)(2) "if the jury could find by a preponderance of the evidence that the acts did in fact occur." *United States v. Bowe*, 221 F.3d 1183, 1192 (11th Cir. 2000).

There was sufficient evidence in the record for the jury to find by a preponderance of the evidence that Mr. Michel owned (or co-owned) the Rule 404(b) evidence, and therefore that he had committed other acts that were probative of his intent to commit the charged acts. For instance, Special Agent Kennedy testified that Mr. Michel stated that during the Georgia traffic stop he had been in

9

possession of $ 70,000 due to a car sale. Additionally, Mr. Michel testified that he was in possession of $ 46,000 during the stop because he was supposed to purchase a restaurant in Georgia during the trip. Moreover, Corporal Smith testified that he had to twice ask Mr. Occi and Mr. Michel to identify the owner of the bag, and only then (after a low volume conversation between the two) did Mr. Occi claim the bag. In short, there was sufficient evidence for the jury to conclude that Mr. Michel owned the Rule 404(b) evidence, and thus that he had committed other acts that were probative of his intent to commit the charged acts.

Finally, Mr. Michel claims that "[i]t was extremely prejudicial for the jury to hear that [he] was involved in a traffic stop where a large amount of currency was found in the car." Appellant's Br. at 24. That may be so, but it is not the proper inquiry. Relevant evidence is inherently prejudicial to some degree in criminal proceedings; hence, the proper inquiry is whether *its probative value is substantially outweighed by undue prejudice*. *See Flanders*, 752 F.3d at 1335.

In our adversarial system of adjudication, we follow the principle of party presentation. *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). "[I]n both civil and criminal cases, in the first instance and on appeal . . . we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Id.* (citing *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)). To protect the rights of a *pro se* litigant, we may depart from the party

presentation principle in criminal cases, but absent this or other extraordinary circumstances, "our system is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *Id.* (citing *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in judgment)) (brackets in the original).

Mr. Michel is not a *pro se* litigant, nor are any extraordinary circumstances present that would justify a departure from the principle of party presentation. Mr. Michel does not argue that the district court manifestly erred in ruling that the probative value of the Rule 404(b) evidence was not substantially outweighed by its prejudice, so we do not address the argument.

Because each argument presented by Mr. Michel is insufficient for us to find that the district court erred in admitting the Rule 404(b) evidence, we cannot hold that it committed an abuse of discretion in doing so.[2]

**IV**

For the foregoing reasons, we affirm the district court's admission of the Rule 404(b) evidence.

---

[2] The government argues that any abuse of discretion resulted only in harmless error. Because we hold that the district court did not abuse its discretion in admitting the Rule 404(b) evidence, we do not conduct a harmless error analysis.

11

**AFFIRMED**.