[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10046
Non-Argument Calendar

_____

D.C. Docket No. 3:18-cr-00152-BJD-MCR-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KAREN COLLINS,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 1, 2021)


Before WILSON, ROSENBAUM, and BLACK, Circuit Judges.

PER CURIAM:

Karen Collins appeals her conviction for conspiracy to import five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 963, 952, and 960(a)(1) and (b)(1)(B). Collins argues the district court abused its discretion by admitting into evidence under Federal Rule of Evidence 404(b) her 2001 conviction for the sale or delivery of cannabis because its probative value was substantially outweighed by undue prejudice. She also argues the court erred in denying her motion for judgment of acquittal because the government presented insufficient evidence that she knowingly entered into an agreement to import five kilograms or more of cocaine. After review, we affirm Collins's conviction.

## I.  DISCUSSION

### A.  Admission of Prior Conviction under Rule 404(b)

In 2001, Collins was convicted for the sale or delivery of cannabis and for possession of more than 20 grams of cannabis. She contends the probative value of her prior conviction for the sale or delivery of cannabis was substantially outweighed by undue prejudice because the prior offense is substantially different from and remote in time to the charged offense and because the government had other evidence of her intent and knowledge.

We review a district court's decision to admit evidence under Rule 404(b) for an abuse of discretion. *United States v. Brown*, 587 F.3d 1082, 1091 (11th Cir. 2009). However, even if an evidentiary ruling is erroneous, harmless error review

2

applies. *United States v. Langford*, 647 F.3d 1309, 1323 (11th Cir. 2011). "An error is harmless unless there is a reasonable likelihood that it affected the defendant's substantial rights." *Id.* (quotation marks omitted). Under this standard, we will not reverse "if sufficient evidence uninfected by any error supports the verdict, and the error did not have a substantial influence on the outcome of the case." *Id.* (quotation marks omitted).

Evidence of a crime, wrong, or other act is not admissible to prove the defendant's character in order to show she acted in accordance with her character on a particular occasion. Fed. R. Evid. 404(b)(1). However, such evidence may be admissible to prove, among other things, intent and knowledge. Fed. R. Evid. 404(b)(2). A three-part test governs the admissibility of evidence under Rule 404(b). Evidence is admissible under Rule 404(b) if it is: "(1) relevant to one of the enumerated issues other than the defendant's character, (2) supported by sufficient evidence to allow a jury to determine that the defendant committed the act, and (3) not unduly prejudicial under the standard set forth in Rule 403." *United States v. Barron-Soto*, 820 F.3d 409, 417 (11th Cir. 2016). Here, Collins argues only that the third condition for admissibility was not met.

Under Rule 403, the district court may exclude relevant evidence if its probative value is substantially outweighed by a danger of undue prejudice. Fed. R. Evid. 403. This determination "calls for a common sense assessment of all the

3

circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." *United States v. Jernigan*, 341 F.3d 1273, 1282 (11th Cir. 2003) (quotation marks omitted).

We conclude that even if the district court abused its discretion in admitting Collins's prior 2001 conviction, any error was harmless. The indictment charged Collins and three codefendants—Amir Bashir, Shaun Richards, and Narada Williams—with a single count of conspiring to import five or more kilograms of cocaine into the United States and provided that the conspiracy occurred between 2015 and 2018. By pleading not guilty, Collins put her intent to participate in the conspiracy at issue. *See United States v. Matthews*, 431 F.3d 1296, 1311 (11th Cir. 2005) (explaining that in every conspiracy case, a defendant's not guilty plea puts her intent at issue, unless she takes affirmative steps to remove the issue of intent from the case); *United States v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998) ("A defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue."). And under our precedent, Collins's prior drug offense is highly probative of her intent to engage in the instant conspiracy. *See Matthews*, 431 F.3d at 1311 (stating "circuit precedent regards virtually any prior drug offense

as probative of the intent to engage in a drug conspiracy"); *Barron-Soto*, 820 F.3d at 417 ("Evidence of prior drug dealings is highly probative of intent to distribute a controlled substance, as well as involvement in a conspiracy." (quotation marks omitted)).

In evaluating whether the probative value of Collins's prior offense was substantially outweighed by the risk of undue prejudice, the differences between the prior and charged offenses, and their temporal proximity, do not clearly disfavor admissibility.  We have previously affirmed the admission of extrinsic offense evidence under Rule 404(b) even when different quantities of different controlled substances are involved.  *See id.* at 417-18 (holding evidence of 7-year-old drug trafficking conviction involving .38 kilograms of marijuana was admissible in a case involving more than 3 kilograms of methamphetamine); *United States v. Lampley*, 68 F.3d 1296, 1300 (11th Cir. 1995) (holding evidence of 15-year-old, small-scale marijuana offenses admissible even though they were "unlike the instant large cocaine deal" involving 10 kilograms of cocaine); *cf. United States v. Sanders*, 668 F.3d 1298, 1315 (11th Cir. 2012) (holding defendant's 22-year-old conviction involving 1.4 grams of marijuana was not admissible in a case involving an international conspiracy to traffic 153 kilograms of cocaine, but concluding error was harmless).

As to temporal proximity, the prior offense conduct occurred in 2000, while most of Collins's conduct discussed at trial occurred in 2017. Although we have recognized temporal remoteness may depreciate the probative value of an extrinsic offense, we have never adopted a bright-line rule with respect to temporal proximity. *Matthews*, 431 F.3d at 1311. And in *Lampley*, we affirmed the admission of prior drug offenses that were only two years more recent than this one. *See Lampley*, 68 F.3d at 1300.

Nevertheless, we need not decide whether the district court abused its discretion in admitting Collins's prior conviction because we conclude any error was harmless. Collins argues her 2001 conviction lacked probative value in light of the government's other evidence of intent, but the strength of this other evidence supports our conclusion that any error in admitting the 2001 conviction was harmless. As discussed below, the evidence against Collins was substantial. The government introduced the testimony of nine witnesses, including women who were directly recruited by Collins to travel abroad to take or bring back bags, as well as documentary evidence corroborating Collins's involvement in the conspiracy. One potential recruit testified Collins specifically told her she was asking her to transport money and cocaine, while another testified Collins advised her she would be paid more for bringing a bag back from Trinidad. As such, there was sufficient evidence of Collins's guilt even without the 2001 conviction. *See*

6

*Langford*, 647 F.3d at 1323.  Further, the prior conviction was introduced at the close of the government's case and not mentioned by the government during its closing argument.  *See United States v. Hands*, 184 F.3d 1322, 1329 (11th Cir. 1999) (stating we examine the record as a whole in assessing harmlessness, including the trial context of the error).

Moreover, when the conviction was introduced, and again in the final jury instructions, the district court instructed the jury that Collins's prior offense had been admitted for the limited purpose of helping the jury determine if Collins "had the state of mind or intent necessary to commit the crime charged in the indictment," and further stated that the jury could "consider the age of the prior act" in deciding whether it was probative of Collins's intent or knowledge.  Any prejudice was therefore mitigated by the court's limiting instruction to the jury regarding the Rule 404(b) evidence.  *See United States v. Edouard*, 485 F.3d 1324, 1346 (11th Cir. 2007) (noting limiting instruction mitigated any unfair prejudice possibly caused by admission of prior conduct).  We therefore conclude Collins's substantial rights were not affected by the admission of the conviction, and any error was harmless.  *See Langford*, 647 F.3d at 1323.

B.  *Denial of Motion for Judgment of Acquittal*

Collins next argues there was insufficient evidence that she willfully and with knowledge entered into the conspiracy to import cocaine, and that the district

court therefore erred in denying her motion for judgment of acquittal.

We review the denial of a motion for a judgment of acquittal on sufficiency of the evidence grounds de novo, viewing all facts and inferences in the light most favorable to the government. *United States v. Holmes*, 814 F.3d 1246, 1250 (11th Cir. 2016). We will affirm the district court's denial of a motion for judgment of acquittal "if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt." *Id.* (quotation marks omitted). "In rebutting the government's evidence, a defendant must do more than put forth a reasonable hypothesis of innocence, because the issue is whether a reasonable jury could have convicted, not whether a conviction was the only reasonable result." *United States v. Cruickshank*, 837 F.3d 1182, 1188 (11th Cir. 2016). "[T]he jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial," and "our sufficiency review requires only that a guilty verdict be reasonable, not inevitable" based on that evidence. *United States v. Browne*, 505 F.3d 1229, 1253 (11th Cir. 2007).

The same test for sufficiency of the evidence applies regardless of whether the evidence is direct or circumstantial, "and no distinction is to be made between the weight given to either direct or circumstantial evidence." *United States v. Isnadin*, 742 F.3d 1278, 1303 (11th Cir. 2014). However, "[w]here the government relies on circumstantial evidence, reasonable inferences, not mere

8

speculation, must support the jury's verdict." *United States v. Klopf*, 423 F.3d 1228, 1236 (11th Cir. 2005) (quotation marks omitted).

To sustain a conviction for conspiracy to import cocaine under 21 U.S.C. §§ 963 and 952, the government must prove beyond a reasonable doubt that "there existed an agreement between two or more persons to import narcotics into the United States and that the defendant knowingly and voluntarily participated in that agreement." *United States v. Arbane*, 446 F.3d 1223, 1228 (11th Cir. 2006). Although the government must prove the defendant knew of the essential nature of the conspiracy, it need not prove the defendant knew all the details of the conspiracy or participated in every aspect of the conspiracy. *United States v. Miranda*, 425 F.3d 953, 959 (11th Cir. 2005). The government may carry its burden through circumstantial evidence, "including inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme." *Id.* (quotation marks omitted).

The district court did not err in denying Collins's motion for a judgment of acquittal because, viewing the evidence in the light most favorable to the government, a reasonable jury could have found beyond a reasonable doubt there existed an agreement to import cocaine into the United States, and Collins knowingly and voluntarily participated in the agreement. *See Arbane*, 446 F.3d at 1228. As to the existence of the conspiracy, Kathy Nguyen testified that two of

9

Collins's codefendants—Richards and Bashir—arranged for her to travel to Jamaica and Trinidad and paid her to smuggle cocaine back into the United States in suitcases, eventually leading to Nguyen's arrest in 2017.

The testimony of five other witnesses revealed the extent of Collins's participation in the conspiracy and supports a finding Collins knew the purpose of the conspiracy was to import cocaine. First, the testimony of Brittany Sands and Tynesha Jenkins showed Collins was involved with Bashir in arranging two trips to Jamaica, the second of which resulted in the seizure of 2.5 kilograms of cocaine. According to Sands's testimony, Collins and Bashir invited her and her mother Sonia Perez—who lived with and was in a relationship with Collins—to take a free trip to Jamaica. During their meeting at Collins's home, Bashir told the women that, in exchange for the trip, they would be delivering money, which was hidden in the lining of suitcases he provided. Once in Jamaica, Sands and Perez met with Richards and Williams, who had the women transfer their personal belongings to other bags and took the suitcases for several hours. A few days later, the women returned to Florida with the suitcases, which Bashir collected and brought to Collins's home. Sands was paid $2,000.

For Sands's second trip to Jamaica, which she agreed to take with her friend Jenkins, Bashir gave Jenkins the suitcase in Collins's living room while Collins was present, and Collins helped Jenkins purchase plane tickets using Collins's

10

computer.  Collins also drove with Jenkins to Miami for a same-day passport, which Collins paid for in cash.  Jenkins texted photos of herself to Sands so Richards would know what she looked like when they arrived in Jamaica, and Sands sent those photos to Collins, not Richards.  Just as on the first trip, the women brought the suitcases back with them, but this time Sands and Jenkins were arrested when approximately 2.5 kilograms of cocaine was discovered hidden in the suitcases upon their return to the United States.

Second, the testimony of Brittany Carls, Twyleasha Conway, and Danyette Moore showed Collins actively recruited women to travel abroad either taking or bringing back bags, and that she paid for their passports and travel expenses. Collins approached Carls, a baker she supervised at Dunkin' Donuts, about taking something to Jamaica and bringing something back in exchange for a free trip. Carls testified she later found out from Collins that she was referring to money and cocaine, and that Collins had talked to her about carrying cocaine back.  Carls told Collins she was not interested, but Collins approached her again, telling her that she had sent Sands and Perez before and nothing would happen, and that if Carls was uncomfortable, she could transport only the money, which was easier and would result in less punishment if she was caught.  Collins also offered to obtain a passport for Carls.

11

Conway, another woman Collins supervised at Dunkin' Donuts, testified she spoke to Collins and agreed to go to Trinidad. Collins told her she could have an all-expense-paid vacation if she took something or brought something back. Collins gave her money for a same-day passport, paid for her plane ticket, took her photo so she would be recognized at the airport in Trinidad, and agreed to pay her $5,000 if she brought a bag back to the United States. Though Conway never got farther than the Miami airport because of an outstanding warrant, Conway and Collins discussed trying to make the trip again once Conway was able to travel.

Moore testified Collins recruited her to transport money to Trinidad, and that she had met Collins through a mutual friend who would also "carry bags" for Collins. Collins obtained a passport for Moore, paid for Moore's trip to Trinidad, arranged for her transportation to the airport, and made her hotel reservation. Once in Trinidad, Moore met Richards, who asked her to take a bag back with her, which she understood to contain drugs. Moore refused and contacted Collins, who explained she would be paid more if she returned to the United States with the bag.

Finally, the government presented documentary evidence that corroborated the witness testimony and further linked Collins to the conspiracy. This evidence included, *inter alia*: (1) a calendar entry from Bashir's phone for the dates that Sands and Perez were in Jamaica with their names, Collins's nickname "KK", and the subject "KK = 2-1/2," which coincided with the 2.5 kilograms of cocaine later

seized during Sands's second trip; (2) phone records showing communications with Bashir and Richards; and (3) bank records showing the purchase of airline tickets and several same-day deposits and withdrawals in amounts ranging from $1,000 to $6,000. A special agent with the Department of Homeland Security testified the same-day transactions were often used to exchange small bills for large ones.

Taking all the evidence together and construing it in the light most favorable to the government, a jury could find beyond a reasonable doubt Collins knowingly and voluntarily participated in the conspiracy and knew its essential nature was to import cocaine. *See Arbane*, 446 F.3d at 1228; *Miranda*, 425 F.3d at 959. Significantly, Collins told Carls she was referring to transporting money and cocaine, and that if caught, Carls would be subject to less punishment if she was transporting only money. Collins offered to pay Conway $5,000 to bring a bag back from Trinidad. And, when Richards asked Moore to bring a bag back from Trinidad, Moore called Collins, who advised her she would make more money if she brought a bag back home. Moreover, on the trip for which Collins purchased a same-day passport for Jenkins, 2.5 kilograms of cocaine were seized from Jenkins and Sands upon their return to the United States. This evidence supports a reasonable inference Collins knew the purpose of the conspiracy was to import cocaine. *See Klopf*, 423 F.3d at 1236; *Miranda*, 425 F.3d at 959. Collins's

13

voluntary participation in the conspiracy was well established by her active recruitment of Carls, Conway, and Moore, in addition to the fact that she paid for passports and other travel-related expenses for those who agreed to take or bring back a bag. Collins argues she was merely helping to send people on trips and assisting Bashir with currency transfers. A reasonable jury, however, could have concluded otherwise and found Collins guilty beyond a reasonable doubt. *See Cruickshank*, 837 F.3d at 1188; *Browne*, 505 F.3d at 1253.

## II. CONCLUSION

Accordingly, for the reasons above, we affirm Collins's conviction.

**AFFIRMED.**